

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-2-1999

# Kapral v. USA

Precedential or Non-Precedential:

Docket 97-5545

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Kapral v. USA" (1999). *1999 Decisions.* Paper 26.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/26

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 2, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-5545

MICHAEL KAPRAL,

      Appellant

v.

UNITED STATES OF AMERICA

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civ. No. 97-cv-2290)
District Judge: Hon. Alfred M. Wolin

Submitted Pursuant to Third Circuit LAR 34.1
June 25, 1998

Before: GREENBERG, ALITO and McKEE Circuit Judges.

(Filed February 2, 1999)

      Marcia G. Shein, Esq.
      National Legal Services, Inc.
      52 Executive Park South
      Suite 5203
      Atlanta, GA 30329

      Attorney for Appellant

George S. Leone, Esq.
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

Attorney for Appellee

OPINION OF THE COURT

McKee, Circuit Judge.

We are asked to decide when a criminal conviction becomes "final" within the meaning of the limitations provision of 28 U.S.C. S 2255. The district court ruled that the period of limitations begins to run when a defendant can no longer take a direct appeal as of right. For the reasons that follow, we rule that a conviction does not become "final" under S 2255 until expiration of the time allowed for certiorari review by the Supreme Court. Appellant Michael Kapral did not file a petition for certiorari, but he filed his S 2255 motion within one year of the date on which his time to seek certiorari review expired. We hold that his filing was timely, and we will reverse and remand for proceedings consistent with this opinion.

I. Background

Kapral pled guilty to income tax evasion, and conspiracy to distribute and to possess with intent to distribute at least 700 grams of methamphetamine. He was sentenced to 120 months of imprisonment and 8 years of supervised release on May 25, 1995. We affirmed the judgment of conviction on February 13, 1996. Kapral did notfile a petition for a writ of certiorari in the United States Supreme Court.

On April 29, 1997, Kapral filed a counseled motion under S 2255 in which he claimed that his prior counsel provided ineffective assistance and that the resulting plea was therefore not a knowing and intelligent one. The district court did not reach the merits of Kapral's claims, however,

2

as the court ruled that his motion was untimelyfiled. Under S 2255, a motion must be filed within one year of "the date on which the judgment of conviction becomes final." The district court interpreted that language to mean that a defendant must file within one year of the date on which this court affirms the defendant's conviction and sentence. Since Kapral filed his motion more than one year after we affirmed on direct review, the district court dismissed his motion with prejudice. We granted Kapral's request for a certificate of appealability. See 28 U.S.C. S 2253(c)(1)(B). The district court had jurisdiction pursuant to 28 U.S.C. S 2255. We have jurisdiction pursuant to 28 U.S.C. SS 2253(a) and 2255. We review issues of statutory interpretation de novo. See, e.g., Stiver v. Meko, 130 F.3d 574, 577 (3d Cir. 1997).

II. Discussion

A.

Section 2255 provides in relevant part:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. S 2255.

This provision creates a statute of limitations for federal defendants who attempt to collaterally attack their conviction and/or sentence pursuant to S 2255. See Miller v. New Jersey State Dep't of Corrections, 145 F.3d 616, 619 n.1 (3d Cir. 1998) (holding that the one-year requirement for bringing a motion under S 2255 is a statute of limitations subject to equitable tolling, not a jurisdictional bar). It was enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which was signed into law on April 24, 1996. In Burns v. Morton, 134 F.3d 109 (3d Cir. 1998), we held that "S 2255 motions filed on or before April 23, 1997, may not be dismissed for failure to comply with S 2255's one-year period of limitation," id. at 112, and we further held that, under the principles set forth in Houston v. Lack, 487 U.S. 266 (1988), a pro se prisoner's S 2255 motion is deemed filed at the moment it is delivered to the prison officials for mailing. See 134 F.3d at 113. Although Kapral is incarcerated, his motion was mailed by counsel and received by the district court clerk's office on April 29, 1997, which was after the Burns deadline. Accordingly, his motion is subject to the terms of S 2255's one-year limitation period. 1

_____

1. Kapral contends that the district court should have deemed his motion timely filed on April 22, 1997, which is the date counsel deposited the motion in the mail. Kapral advances several arguments in support of this position, all of which we reject as meritless, although one
warrants further discussion. Kapral claims that an employee of the district court clerk's office told his counsel that "the date that would be
used for purposes of determining the filing of[a] Federal habeas corpus petition[ ] would be the date that it was mailed in the United States Postal Service using adequate postage." Appellant's Br. at 34. Kapral argues that counsel "reasonably relied" on that information and that, under principles of equity, his motion should be deemed filed on the date it was mailed. The record reflects that Kapral's counsel is an experienced practitioner who should have known or verified the elementary rules that govern the filing of a S 2255 motion. We reject, therefore, the suggestion that counsel's alleged reliance on misinformation from the clerk's office was reasonable. Cf. Kraft, Inc. v. United States , 85 F.3d 602, 609 (Fed. Cir. 1996); Gabriel v. United States, 30 F.3d 75, 77 (7th Cir. 1994). A counseled S 2255 motion will be deemed "filed," at the earliest, on the date it is received by the district court clerk's office. See Rule 3(b), Rules

4

Thus, we are called upon to decide when a "judgment of conviction becomes final" within the meaning of S 2255, which is an issue of first impression for this Court. The district court held that finality occurs when a court of appeals affirms the judgment of conviction on direct review even if the defendant subsequently files a timely petition with the Supreme Court for certiorari review. The district court reasoned that certiorari is discretionary and granted in relatively few cases, and noted that "challenges by state and federal prisoners to their convictions and confinement[ ] are granted review only .45% of the time." Kapral v. United States, 973 F. Supp 495, 498 n.6 (D.N.J. 1997) (internal quotation marks and citation omitted). The district court then drew a distinction between an appeal as of right and a discretionary appeal. Since the latter was so infrequently granted, the district court reasoned that a defendant's conviction was final when the defendant no longer had a right (as opposed to a hope) of further review. The district court stated:

> The Court [ ] declines to define final judgment of conviction based on a prisoner's petitioning the Supreme Court for certiorari. In contrast to the direct appeal of right, petitioning for certiorari constitutes a discretionary appeal. In exercising this discretion, the Supreme Court rarely grants certiorari in sentencing cases. In addition, having exercised the appeal of right, the petitioner has had a fair opportunity to present his federal claims in an appellate forum. Therefore, a judgment perfected by appeal may fairly be deemed a

_____

Governing S 2255 Proceedings in the United States District Courts; see also Gonzalez v. United States, 2 F. Supp.2d 155, 156 (D. Mass. 1998) ("[A] section 2255 petition is filed upon the receipt of the petition by the clerk of court and a determination that it complies with Rule[s] 2 and 3 [of the Rules Governing S 2255 Proceedings]."); United States v. Nguyen, 997 F. Supp. 1281, 1288 (C.D. Cal. 1998) ("[A] S 2255 motion is deemed filed on the date it is received (and perhaps lodged) by the Clerk of the Court."). Here, the clerk's office stamped Kapral's motion "received" on April 29, 1997, and Kapral does not dispute that his motion was received on that date. Thus, the district court did not err in treating his motion as filed on April 29, 1997.

final judgment from which the S 2255 statute of limitations begins to run.

Id. at 498 (footnotes omitted). Thus, the district court based its definition of "final judgment" upon the improbability of successful discretionary appeal and the fair opportunity for review afforded by termination of appeals as of right.[2] The district court further opined that "an equitable tolling" of the limitations period would apply if the Supreme Court grants a defendant's petition for certiorari review. See id. at 499 n.7.

Kapral argues that a defendant has a right to petition the Supreme Court for certiorari review and that the time needed to do so cannot be omitted from considerations of finality. Accordingly, Kapral contends that the S 2255 clock begins to tick only after the 90-day period to file a certiorari petition has expired. If a certiorari petition is timely filed, he argues, the clock would start to tick when the Supreme Court either denies certiorari or affirms the judgment of conviction on the merits. Notably, the government agrees with Kapral that if a defendant timely seeks certiorari review, the judgment of conviction does not become final until the Supreme Court denies certiorari or affirms on the merits. Appellee's Br. at 18-20. The government urges that we affirm, however, on the ground that when a defendant, like Kapral, chooses not file a certiorari petition, his judgment of conviction becomes final on the date this court affirms it on direct review. Id. at 20-24.

B.

"We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980). Here, neither "judgment of conviction" nor "final" is expressly defined in S 2255. We consider these terms seriatim.

_____

2. The district court was also persuaded by the difference between the wording of 28 U.S.C. S 2244(d)(1)(A) and that of S 2255. We will discuss that distinction below.

6

In federal criminal practice, "judgment of conviction" refers to a formal document, signed by the trial judge and entered by the clerk of the district court, that sets forth "the plea, verdict or findings, the adjudication, and the sentence." FED. R. CRIM. P. 32(d)(1); see also BLACK'S LAW DICTIONARY 843 (6th ed. 1990) (quoting Rule 32(b)(1), the predecessor to Rule 32(d)(1), in defining "judgment of conviction"). Under Rule 32(d)(1), a judgment of conviction "includes both the adjudication of guilt and the sentence." Deal v. United States, 508 U.S. 129, 131 (1993); see also Ball v. United States, 470 U.S. 856, 862 (1985) ("[T]he sentence is a necessary component of a `judgment of conviction.' "). A judgment of conviction is entered only after the trial court has completed the sentencing process, see Howard v. United States, 135 F.3d 506, 509 (7th Cir. 1998), and thus the term is commonly understood to refer to both the conviction and sentence.

Under S 2255, a defendant is permitted to collaterally attack both the conviction and sentence. See, e.g., McFarland v. Scott, 512 U.S. 849, 859 (1994) ("[C]riminal defendants are entitled by federal law to challenge their conviction and sentence in habeas corpus proceedings."). We have no reason to doubt that Congress used the term "judgment of conviction" in S 2255 in accordance with this well-settled meaning. Thus, S 2255's limitation period begins to run on the date on which the defendant's conviction and sentence become "final."

As is evident from the district court's thoughtful discussion, and the position of the parties on appeal, a judgment of conviction could become "final" on one of several dates. These include: the date on which the defendant is sentenced or the judgment of conviction is entered on the district court docket; the date on which the court of appeals affirms the conviction and sentence or the time for appeal expires; or the date on which the Supreme Court affirms on the merits, denies a timely filed petition for certiorari, or the time to seek certiorari review expires. We must determine which concept of "finality" Congress intended in S 2255. Our inquiry is guided by our awareness that Congress enacted S 2255's limitations period to control collateral attacks upon judgments obtained in federal criminal cases. As the Supreme Court has noted,

> [t]he maxim noscitur a sociis, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress.

Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307 (1961); see also Deal v. United States, 508 U.S. 129, 132 (1993) ("[A] fundamental principle of statutory construction (and, indeed, of language itself) [is] that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used.").

The government submits the following dictionary definition of "final" in support of its interpretation of the statute:

> 1. pertaining to or coming at the end; last in place, order, or time .... 2. ultimate .... 3 . conclusive or decisive: a final decision. 4. Law. a . precluding further controversy on the questions passed upon: The judicial determination of the Supreme Court is final. b . determining completely the rights of the parties, so that no further decision upon the merits of the issues is necessary: a final judgment or decree ....

Appellee's Br. at 18 (quoting WEBSTER' S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE532 (1989 ed.)); see also BLACK'S LAW DICTIONARY 629 (6th ed. 1990) (defining "final" as "[l]ast; conclusive; decisive; definitive; terminated; completed" and defining "final decision or judgment" as "[o]ne which leaves nothing open to further dispute and which sets at rest cause of action between the parties. One which settles rights of parties respecting the subject matter of the suit and which concludes them until it is reversed or set aside.... Also, a decision from which no appeal or writ of error can be taken.").

We agree with the government's analysis that, when a defendant files a timely petition for certiorari review, the defendant's judgment of conviction does not become"final" until the Supreme Court acts. Until then it cannot be said that the determination of the court of appeals is"final" within the context of S 2255, a provision that authorizes the commencement of a collateral attack upon a judgment of

8

conviction. It is the action of the Supreme Court in ruling on the certiorari petition that brings about closure on direct review and elevates the decision of the court of appeals to a level of finality that is "the last in place, order or time," "precludes further controversy on the questions passed upon," and is "a decision from which no appeal or writ of error can be taken."

It is, of course, true that when a court of appeals issues its judgment on direct review, the resulting mandate is "final" in the sense that it leaves nothing left to be decided on the merits. However, the decision of the district court is final in the same sense, and no less worthy of being considered "conclusive or decisive" by that measure. Both judgments are subject to further review, and wefind, therefore, that neither is "final" within the meaning of S 2255. Section 2255 is a provision that authorizes the commencement of a collateral attack upon a judgment of conviction. Accordingly, it is clear that "final," as used in S 2255, refers to the decision on direct review that "precludes further controversy on the questions passed upon," the one "from which no appeal or writ of error can be taken." We are persuaded that Congress intended this concept of finality to control petitions filed under S 2255's one-year limitations period.

As noted, a collateral attack is generally inappropriate if the possibility of further direct review remains open:

> A district court should not entertain a habeas corpus petition while there is an appeal pending in [the court of appeals] or in the Supreme Court. The reason for the rule is that disposition of the appeal may render the [habeas corpus writ] unnecessary. This is true if the appeal is still pending [in the court of appeals] . . . . It is even more appropriate . . . when review of the conviction is pending before the Supreme Court.

Feldman v Henman, 815 F.2d 1318, 1320-21 (9th Cir. 1987) (internal quotation marks and citations omitted). This is a procedural reality regardless of the probability that the Supreme Court will actually grant certiorari. Thus, if a defendant files for certiorari review, direct review is ongoing, and the commencement of a simultaneousS 2255

9

proceeding would be inappropriate. Accordingly, we hold that a judgment of conviction does not become "final" within the meaning of S 2255 until the Supreme Court affirms the conviction and sentence on the merits or denies a timely filed petition for certiorari. Accord United States v. Simmonds, 111 F.3d 737, 744 (10th Cir. 1997) ("Mr. Simmonds' conviction became `final' after the Supreme Court denied certiorari[.]").

In addition, if a defendant does not file a certiorari petition, the judgment of conviction does not become"final" until the time for seeking certiorari review expires. A defendant has 90 days from the date on which the court of appeals affirms the judgment of conviction tofile a petition for a writ of certiorari.3 During that 90-day period, the defendant retains the right to seek to overturn the judgment of the court of appeals in the Supreme Court. Only when the time for seeking certiorari review has expired is it appropriate for a defendant to commence a collateral attack on the conviction and sentence. See United States v. Dorsey, 988 F. Supp. 917, 919 n.3 (D. Md. 1998). As the district court explained in Dorsey:

> It makes [little] sense to suggest that a judgment of conviction is "final" for purposes of S 2255 upon completion of direct appeal of right, rather than the conclusion of any petition to the Supreme Court, simply because it is unlikely that the Supreme Court will grant certiorari. If a petitioner should awaitfinal disposition of direct appeal before petitioning for collateral relief, that final disposition should logically

_____

3. Supreme Court Rule 13 provides in relevant part:

> 1. Unless otherwise provided by law, a petition fo r a writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort or a United States court of appeals (including the United States Court of Appeals for the Armed Forces) is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment. A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review.

be when no further avenues for direct appeal exist, not
when it becomes increasingly unlikely that such direct
appeal will continue.

Id. at 919 (comparing the reasoning in Feldman with the
district court's analysis here.).

As noted above, the district court's analysis in the
present case was greatly influenced by the low probability
of the Supreme Court actually granting discretionary review
of the decision of a court of appeals. In addition, the district
court reasoned that its analysis was fortified by, and
consistent with, Congress's intent in enacting AEDPA. The
court stated:

> The Court's holding comports with the policy
> underlying the Act. In amending 28 U.S.C. S 2255,
> Congress intended to reduce the abuse of habeas
> corpus that results from delayed and repetitivefilings
> . . . while preserving the availability of diligently sought
> review. . . . Defining the date of final judgment of
> conviction as the date of the appeals court's decision
> facilitates the congressional intent underlying the
> AEDPA. Specifically, it counters habeas corpus abuse
> by definitively limiting the time in which a prisoner
> may seek S 2255 review, while simultaneously
> providing ample opportunity for the prisoner to
> exercise the right to seek relief under S 2255.

Kapral, 973 F. Supp at 498 (internal quotation marks and
citations omitted). We find, however, that AEDPA's purpose
is best furthered by an interpretation of S 2255 that
recognizes the legal reality that the decision of a court of
appeals is subject to further review, and therefore not
"final" within the meaning of S 2255 until direct review has
been completed. Recognizing that one is allowed 90 days to
file a petition for certiorari does not mitigate the
congressional objective of imposing time limits where none
previously existed.[4]

_____

4. See 142 CONG. REC. H3606 (daily ed. Apr. 18, 1996) ("I introduced this
legislation . . . to impose a statute of limitations on the filing of
habeas
corpus petitions.") (statement of Rep. Hyde).

11

In short, although a defendant has no review as of right in the Supreme Court after a conviction is affirmed on direct review, a defendant does have a right to petition for that review. Thus, we think the district court drew too fine a line in distinguishing between review as of right and discretionary review for purposes of defining "final" under S 2255.

C.

In Griffith v. Kentucky, 479 U.S. 314, 320 (1987), the Supreme Court had to determine if the rule announced in Batson v. Kentucky, 476 U.S. 79 (1986) would be applied to convictions that had become final prior to Batson being decided. The Court held that, under its precedent, the answer to that inquiry required a "three-pronged analysis . . . both to convictions that were final and to convictions pending on direct review" to determine if Batson applied in a particular instance. The Court then stated: "By `final' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." Griffith, 479 U.S. at 321 n.6.

Moreover, in Teague v. Lane, 489 U.S. 288, 310 (1989), the Court held that federal habeas corpus relief based upon a "new rule" generally is unavailable if the rule was announced after the defendant's conviction and sentence became "final." See also Caspari v. Bohlen , 510 U.S. 383, 389 (1994). In the wake of Teague, "[a] threshold inquiry in every habeas case . . . is whether the court is obligated to apply the Teague rule to the defendant's claim." Id.; see also Schiro v. Farley, 510 U.S. 222, 228 (1994). For purposes of a Teague analysis, a defendant's judgment of conviction becomes final (1) on the date the Supreme Court denies certiorari, see, e.g., Stringer v. Black, 503 U.S. 222, 226 (1991), or (2) on the date the time for filing a timely petition for a writ of certiorari expires. See , e.g., Caspari, 510 U.S. at 384.

As the amicus contends, it would make little sense for S 2255's one-year limitation on collateral proceedings to begin to run before a legal event that may give rise to a

12

claim for collateral relief -- i.e., the announcement of a new rule-- has occurred. Rather, in the interest of the orderly administration of direct and collateral proceedings, the first day of the one-year limitations period logically should be the last day on which any applicable new rule could be decided. We find no reason to believe that Congress intended to adopt a definition of finality inS 2255 that is inconsistent with the concept of finality under a Teague analysis.

Furthermore, while Congress has imposed a one-year limitation on the commencement of collateral proceedings, it does not appear that Congress intended to encourage the commencement of collateral proceedings before a defendant has had a full and fair opportunity to litigate his or her claims on direct review. Indeed, as the government contends, commencing a collateral attack while direct review is ongoing would be "wasteful and pointless if the conviction is reversed by the Supreme Court." Appellee's Br. at 19. The outcome on direct review, even if not in the defendant's favor, may also cause the defendant to limit or rethink the claims that would be raised on collateral review, or even dissuade the defendant from seeking collateral review. For these reasons, and to ensure the orderly administration of criminal proceedings, defendants have long been discouraged from commencing S 2255 proceedings before the conclusion of direct review. See Feldman, supra; United States v. Gordon, 634 F.2d 638, 638-39 (1st Cir. 1980) (holding that "in the absence of `extraordinary circumstances' the `orderly administration of criminal justice' precludes a district court from considering a S 2255 motion while review of the direct appeal is still pending"); United States v. Davis, 604 F.2d 474, 484 (7th Cir. 1979) (same); Welsh v. United States, 404 F.2d 333 (5th Cir. 1968) (same); Womack v. United States , 395 F.2d 630 (D.C. Cir. 1968) (same); Masters v. Eide, 353 F.2d 517, 518 (8th Cir. 1965) (same); see also Rule 5, Rules Governing S 2255 Proceedings, Advisory Committee Note (1997) (S 2255 motion "is inappropriate if the movant is simultaneously appealing the decision").

If the one-year limitations period were to run from the judgment of the court of appeals, the defendant who elects

13

to file a certiorari petition may well be forced to commence a simultaneous collateral proceeding before the Supreme Court has ruled. This would only impair the orderly administration of criminal proceedings by delaying the ultimate resolution of both direct and collateral review. If, however, the time for petitioning for certiorari review is allowed to expire before the one-year limitation period begins to run, collateral proceedings rarely will be commenced while direct review is ongoing. Finally, it is beyond dispute that the Supreme Court is the final arbiter of whether a matter warrants certiorari review, and it should have a chance to make that determination before a defendant's judgment of conviction is deemed "final"-- a label that, in a collateral proceeding, carries a presumption that the defendant "stands fairly and finally convicted." United States v. Frady, 456 U.S. 152, 164 (1982).

The government argues that interpreting S 2255 to include the time for seeking certiorari review serves only to delay filing a collateral challenge if a defendant does not petition for certiorari, and it argues that this is contrary to the congressional intent in enacting AEDPA. Appellee's Br. at 20-21. We find this argument unpersuasive. Wefind no indication in either the text of AEDPA or its legislative history that Congress intended that the judgment of the court of appeals would trigger the one-year period for a defendant who does not file a certiorari petition. Further, we reject the suggestion that waiting until the expiration of the 90-day period for seeking certiorari review will somehow thwart AEDPA's goal of speeding up the collateral review process. Prior to AEDPA, a defendant could file aS 2255 motion "at any time," see, e.g. , United States v. Nahodil, 36 F.3d 323, 328 (3d Cir. 1994), and the new one-year limitations period, which replaced the "at any time" language in S 2255, is certain to prevent defendants from delaying the commencement of collateral proceedings. We do not believe that the collateral review process will be slowed in any meaningful way if defendants are afforded 90 days to consult with counsel and to consider whether it would be appropriate to exercise their right to seek certiorari review.

In addition, we reject the suggestion that, because

14

AEDPA has imposed stringent requirements for seeking and obtaining collateral relief, S 2255 must be interpreted to provide as little time as possible for a defendant to file for collateral relief. The "Great Writ" occupies far too important a place in our jurisprudence to justify such an assumption on the basis of the language of AEDPA.5  No one can deny that errors sometimes occur during the course of a criminal prosecution, or that depriving an individual of his or her liberty is not to be taken lightly.

III.

Our research discloses but one other court of appeals that has addressed the precise issue before us. In Gendron v. United States, 154 F.3d 672 (7th Cir. 1998) (per curiam), which was decided after the parties filed their briefs in this case, the court held that "federal prisoners who decide not to seek certiorari with the Supreme Court will have the period of limitations begin to run on the date this court issues the mandate in their direct criminal appeal." Id. at 674. The court reached this conclusion after comparing the language of S 2255 with the language of the new limitations period for state defendants seeking habeas relief pursuant to 28 U.S.C. S 2254. Under S 2244(d)(1)(A), which was also enacted as part of AEDPA, a one-year period of limitation for state defendants begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]" 28 U.S.C. S 2244(d)(1)(A).

The Gendron court assumed that "direct review" in S 2244(d)(1)(A) means "review in the state's highest court," and noted that "Congress explicitly included the time for seeking leave to appeal with a state supreme court even if the petitioner elected not to do so." 154 F.3d at 674. The court further noted that "[s]uch additional language is lacking in S 2255." Id. The court inferred from this difference that "Congress intended to treat the period of limitations differently under the two sections," id., and it concluded that the judgment of a federal defendant who

_____

5. Section 2255 "afford[s] federal prisoners a remedy identical in scope to
federal habeas." Davis v. United States, 417 U.S. 333, 343 (1974).

15

chooses not to seek certiorari review becomes final when the court of appeals issues its mandate. We are unpersuaded by this analysis. We do not think the Gendron analysis affords adequate weight to the context of collateral proceedings so central to an analysis of finality under S 2255.

Moreover, as is discussed in more detail in section V of this opinion, neither the court in Gendron nor the district court here considered the wording of the limitations provision contained in Chapter 154 of Title 28, which was enacted into law as part of AEDPA. We believe this omission undermines the holding of both of those courts.

As noted above, the language of 28 U.S.C. S 2244(d)(1) parallels S 2255. The former provision sets forth the limitation period for persons held in state custody whose collateral challenges are governed by 28 U.S.C.S 2254. Section 2244(d)(1) provides in relevant part:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment becamefinal by the conclusion of direct review or the expiration of the time for seeking such review[.] . . .

28 U.S.C. S 2244(d)(1)(A) (emphasis added). Since S 2244 specifically states that a state judgment of conviction becomes "final" upon the "conclusion of direct review or by the expiration of the time for seeking such review," it may at first appear that the absence of similar modifying language in S 2255 reflects a congressional intent to have the limitations period in the latter begin to run without regard to any additional period that may be consumed by an attempt to win discretionary review from the Supreme Court. However, neither the statutory scheme nor judicial precedent supports that interpretation.

We have not previously had occasion to interpret S 2244(d)(1)(A) in the context presented here. However, the similarity between that provision and S 2255 requires that we consider whether the text of the former furthers our

16

inquiry into Congress's intent in drafting the latter.6 Notably, the district court and the court in Gendron did just that, opining that the different language of the two provisions "warrants individually tailored definitions of final judgment" for state and federal defendants. Kapral 973 F. Supp at 499; Gendron, 154 F.3d at 674.

The government suggests that our recent opinions in Burns and Miller have settled the issue of when a judgment becomes "final" under S 2244(d)(1)(A), and that those cases compel the conclusion that the limitations period under S 2255 runs from the date the court of appeals enters its judgment if the defendant chooses not to seek certiorari review. Appellee's Br. at 24-25. We disagree.

In Burns, we were concerned with whetherS 2244's one-year limitation period could be applied retroactively and thereby reduce the period for filing to less than one year for persons whose convictions and sentences had already become "final" prior to AEDPA's enactment. We held that the one-year limitation could not be applied to habeas petitions that were filed before AEDPA was enacted. See 134 F.3d at 111. We did not examine the language of S 2244 in an attempt to determine when Congress intended a state conviction to become final for purposes of starting the one-year period in which habeas petitions must be filed. To the extent that we did comment upon the text ofS 2244, we stated that "federal inmates who wish to file motions . . . under 28 U.S.C. S 2255 must adhere to a one-year period of limitations virtually identical to that ofS 2244(d)(1)." Id. at 111-12 (emphasis added). That is consistent with our decision here.

In Miller, we were asked to decide if the one-year filing requirement of S 2244 is jurisdictional. There, a state inmate alleged that he was prevented from meeting the one-year deadline because he had been transferred to different

_____

6. Our usual practice in AEDPA cases also counsels us to use this opportunity to interpret S 2244. See Miller, 145 F.3d at 618 n.1 ("[W]e have followed the practice, whenever we decide an AEDPA issue that arises under S 2254 and the same holding would analytically be required in a case arising under S 2255, or vice versa, of so informing the district courts.").

17

institutions thus hindering his compliance with the one-year requirement. We stated that if the requirement was jurisdictional, the district court would lack subject matter jurisdiction, but if it were intended only as a period of limitations, the court must apply the doctrine of equitable tolling to determine if the period had run. We held that the one-year period was a period of limitations, and remanded for a consideration of whether the petitioner could establish such unfairness as to toll the rigid application of the one-year period. In so doing, we again noted the similarity between S 2244 and S 2255 and held that the latter was also subject to the doctrine of equitable tolling. See 145 F.3d at 618 n.1. That is consistent with our analysis here, and to the extent that our discussion in either Miller or Burns suggests that the definition of "final" in S 2244 and S 2255 differs, our discussion would have been dicta and would not control our current inquiry. See Patel v. Sun Co., Inc., 141 F.3d 447, 462 & n.11 (3d Cir. 1998) (discussing the meaning of "dictum" and the reasons why it need not be given any weight).

While the term "direct review" is not defined in S 2244(d)(1)(A), it is axiomatic that direct review of a state court criminal judgment includes the right to seek certiorari review in the United States Supreme Court. See Barefoot v. Estelle, 463 U.S. 880, 887 (1983) ("[T]he process of direct review . . ., if a federal question is involved, includes the right to petition this Court for a writ of certiorari."); Bell v. Maryland, 378 U.S. 226, 232 (1964) ("In the present case, the [state court judgment] is not yet final, for it is on direct review in this Court."); see also Bradley v. United States, 410 U.S. 605, 607 (1973) ("At common law, the repeal of a criminal statute abated all prosecutions which had not reached final disposition in the highest court authorized to review them."); Webb v. Beto , 457 F.2d 346, 348 (5th Cir. 1972) (per curiam) (refusing "[t]o classify a judgment as not final while the case is on appeal to the highest state court, but final afterwards, even though on appeal to the United States Supreme Court"). Therefore, a state court criminal judgment is "final" (for purposes of collateral attack) at the conclusion of review in the United States Supreme Court or when the time for seeking certiorari review expires. Accord Ross v. Artuz , 150 F.3d 97,

18

98 (2d Cir. 1998) ("Ross's conviction becamefinal [under S 2244(d)(1)(A)] when his time to seek direct review in the United States Supreme Court by writ of certiorari expired[.]").

The omission of S 2244's clarifying language from the mention of "final" in S 2255 is not sufficient to cause us to conclude that Congress intended a different concept of finality for state and federal defendants. As discussed above, that concept includes the period in which a defendant can seek discretionary review. Prior to the expiration of the time for certiorari review, a conviction is simply not "final" under either provision.

We also see no principled reason to treat state and federal habeas petitioners differently. Congress has used the term "final" to describe the type of judgment that will trigger the limitations period for both classes of petitioners. Section 2244(d)(1) and 2255's limitations periods were enacted as part of AEDPA, and both provisions are found in Chapter 153 of Title 28. Therefore, Congress's more lucid definition of "final" in S 2244(d)(1)(A) suggests that a judgment likewise becomes "final" within the meaning of S 2255 only when direct review in the United States Supreme Court has concluded. See Sorenson v. Secretary of Treasury, 475 U.S. 851, 860 (1986) ("The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning.") (quotation marks and citation omitted); see also Baskin v. United States, 998 F. Supp. 188, 199 (D. Conn. 1998) (relying on the more descriptive language of S 2244 to hold that S 2255's limitations period begins to run at "the conclusion of direct review or the expiration of the time for seeking such review").7

_____

7. Of course, canons of construction are not absolute and must yield when other indicia of congressional intent suggest a different result. We find that AEDPA' language does not suggest a different result. We are, of course, aware that the difference between the wording of S 2244(d)(1)(A) and S 2255 could simply be the result of imprecise draftsmanship, and not at all an expression of congressional intent. See generally Lindh v. Murphy, 521 U.S. 320, ___, 117 S. Ct. 2059, 2068 (1997) ("[I]n a world of silk purses and pigs' ears, [AEDPA] is not a silk purse of the art of statutory drafting.").

19

The government argues that "[b]ecause the requirement of exhaustion and the interest of comity play no part in actions by federal prisoners, the language of S 2244(d)(1) accommodating those concerns has no bearing or effect on the differently-worded [sic] S 2255." Appellee's Br. at 27. We disagree. While the exhaustion requirement generally is satisfied if the defendant's claims are fairly presented through to the state's highest court for review, see, e.g., Burkett v. Love, 89 F.3d 135, 138 (3d Cir. 1996), the meaning of "exhaustion" does not further our analysis of the proper interpretation of S 2244(d)(1)(A). Section 2244(d)(1)(A) does not provide that the one-year period begins to run on the date the petitioner's claims are "exhausted"-- a term that Congress could easily have employed in the statute if that is what it meant. Rather, S 2244(d)(1)(A) provides that the limitation period begins to run at the "conclusion of direct review or the expiration of the time for seeking such review." That includes the right to review in the United States Supreme Court, and it is settled that the "conclusion of direct review" is not synonymous with "exhaustion of available state court remedies." See Wade v. Mayo, 334 U.S. 672, 681 (1948) (holding that, although certiorari review is part of the direct review process, an application for certiorari is not required to satisfy the exhaustion requirement).

IV.

Although we find that the distinction between the wording of S 2244(d)(1)(A) and S 2255 is insignificant insofar as a definition of "final" is concerned, we do find the distinction in the context in which Congress used"final" there as opposed to Chapter 154 of Title 28 to be significant. As mentioned above, we believe the analysis of both the court in Gendron and the district court here is undermined by the failure of those courts to consider the wording of Chapter 154 when interpreting S 2255.

Congress enacted a new Chapter 154 of Title 28 as part of AEDPA. That Chapter sets forth the procedures that govern S 2254 petitions filed by state prisoners serving capital sentences in states that meet certain conditions set

20

forth in the statute ("opt-in jurisdictions"). See 28 U.S.C. S 2261. Section 2263 provides in relevant part:

>    (a) Any application under this chapter for habeas corpus relief under section 2254 must be filed in the appropriate district court not later than 180 days after final State court affirmance of the conviction and sentence on direct review or the expiration of the time for seeking such review.

>    (b) The time requirements established by subsection (a) shall be tolled--

>    (1) from the date that a petition for certiorari is filed in the Supreme Court until the date of final disposition of the petition if a State prisonerfiles the petition to secure review by the Supreme Court of the affirmance of a capital sentence on direct review by the court of last resort of the State or otherfinal State court decision on direct review[.]. . .

28 U.S.C. S 2263(a)-(b)(1).

Significantly, the limitations period in S 2263 runs from "final State court affirmance of the conviction and sentence on direct review." Congress's use of "State court" to modify the well-settled meaning of direct review (which includes the right to seek review in the Supreme Court), provides strong support for the conclusion that the limitations periods under S 2244 and S2255 – which lack an analogous modifier – run from the conclusion of Supreme Court review. In SS 2244 and 2255, Congress spoke in terms of "finality", not in terms of "affirmance."

Moreover, under S 2263, the limitations period begins to run before the defendant files a certiorari petition, as the statute expressly provides that the limitations period is "tolled" on the date a certiorari petition isfiled. Sections 2244(d)(1)(A) and 2255, in contrast, do not expressly call for a tolling for certiorari proceedings. Tolling is unnecessary if the limitations period begins to run only after certiorari review has been completed. We believe that Congress did not mention tolling in S 2244 orS 2255 because Congress assumed tolling was unnecessary since it did not intend the limitations period to begin until after the

21

time for certiorari review expired. Had Congress intended the limitations period to begin upon the conclusion of an appeal as of right, it would have provided for tolling to allow for a petition for certiorari to be acted upon, just as it did in Chapter 154.

V.

To summarize, we hold that a "judgment of conviction becomes final" within the meaning of S 2255 on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires. If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired.

We affirmed Kapral's conviction and sentence by Judgment Order entered on February 13, 1996. Kapral did not file a petition for a writ of certiorari. Accordingly, his judgment of conviction became final within the meaning of S 2255 when his time for filing a petition for a writ of certiorari expired. Thus, the one-year period of limitation began to run 90 days from February 13, 1996, which was Monday, May 13, 1996. Since Kapral's motion wasfiled on April 29, 1997, it was timely.

VI.

For the foregoing reasons, we will vacate the district court's order dismissing Kapral's S 2255 motion, and we will remand this matter for further proceedings consistent with this opinion.

22

ALITO, Circuit Judge, concurring:

I join the opinion of the court, but I write separately to elaborate on my reasons for disagreeing with the Seventh Circuit's decision in Gendron v. United States , 154 F.3d 672 (7th Cir. 1998), which conflicts with our decision here. Both Gendron and this case concern the new deadline for filing a motion under 28 U.S.C S 2255. The current version of S 2255 imposes a one-year period of limitation and provides that this limitation period shall run from the latest of four specified dates. One of those dates is "the date on which the judgment of conviction becomes final." 28 U.S.C. S 2255. This is the language at issue in both Gendron and the case now before us.

If one looks at only the text of S 2255, the phrase "the date on which the judgment of conviction becomesfinal" is susceptible to two entirely reasonable interpretations. It may mean the date on which occurs the last step in the process of direct appeal. See The Random House Dictionary of the English Language 532 (1967) (defining"final" to mean, among other things, "last in place, order, or time"). Alternatively, the phrase "the date on which the judgment of conviction becomes final" may reasonably be interpreted to mean the date on which the conviction is no longer subject to reversal by means of the process of direct appeal. See id. (defining "final" to mean, among other things, "precluding further controversy on the questions passed upon").

These two interpretations produce the same results in those cases in which the defendant exhausts the process of direct review, i.e., appeals to the court of appeals and then petitions for a writ of certiorari. In those cases, the last step in the process of direct appeal occurs at the same time when the defendant's conviction becomes immune from reversal on direct appeal, i.e., when the Supreme Court denies certiorari or, if certiorari is granted, when the Supreme Court hands down its decision on the merits of the case. These two interpretations, however, produce different results in those cases, such as this case and Gendron, in which the defendant does not exhaust the direct-review process. In cases like this one and Gendron, the last step in the process of direct appeal occurs when

23

the court of appeals' judgment is entered, but the judgment of conviction does not become immune from reversal through the process of direct appeal until the time for petitioning for certiorari expired -- generally 90 days after the entry of the court of appeals' judgment. See Supreme Court Rule 13.1. Thus, in those cases in which a defendant appeals to the court of appeals but does not seek certiorari, the first interpretation will generally give the defendant one year from the entry of the court of appeals' judgment to file a motion under S 2255, whereas the second interpretation will generally give the defendant 15 months from the entry of the court of appeals' judgment to file that motion.

As I have already said, I believe that the text of S 2255 may reasonably be interpreted in either of these ways. Indeed if I were compelled to choose one interpretation based solely on the text of that provision, I wouldfind the choice exceedingly hard. Moreover, I think that a reasonable legislator could easily choose either interpretation. As noted, this choice matters in only those cases in which the defendant does not exhaust all of the steps of the direct review process, i.e., chiefly in those cases in which a defendant does not petition for certiorari. In such cases, a legislator could reasonably think that the one-year limitation period should begin to run upon the entry of the court of appeals' judgment, because all defendants, whether or not they petition for certiorari, should have one year (and no more) from the end of the direct review process to prepare and file a S 2255 motion. On the other hand, recognizing that some defendants who do not end up petitioning for certiorari nevertheless spend some of the time prior to the certiorari deadline considering that option, a legislator could reasonably think that such defendants should have a full year from that deadline to devote to the preparation of a S 2255 motion. Both of these policy choices are reasonable, and viewed prospectively the difference between them is hardly of much significance.

As both the Gendron court and our panel recognize, however, the relevant language in S 2255 must be considered together with 28 U.S.C. S 2244(d)(1), which sets a one-year period of limitation for the filing of a federal habeas petition by a state prisoner. This provision, like the

24

portion of S 2255 at issue in this case, was enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Moreover, S 2244(d)(1), like the current version of S 2255, provides that the limitation period for a state prisoner filing a federal habeas petition begins to run from the latest of four specified dates, one of which is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. S 2244 (d)(1). Accordingly, we must decide what to make of the fact that S 2255 refers to "the date on which the judgment of conviction becomesfinal," whereas S 2241(d)(1) refers to "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."

Tackling this problem, the Gendron court invoked a canon of interpretation set out in Russello v. United States, 464 U.S. 16, 23 (1983), viz., that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."1  Noting that Congress included the phrase "by the conclusion of direct review or the expiration of the time for seeking such review" in S 2244(d)(1) but omitted that phrase fromS 2255, the Gendron court concluded that the concept of the date on which a judgment becomes final must mean something different under S 2255 than it does underS 2244(d)(1), and the Gendron court then held that under S 2255 a judgment becomes final upon the conclusion of direct review.

I would not quarrel with the canon set out in Russello even if it were my prerogative to do so, but, I do not agree with the Seventh Circuit's use of the canon in Gendron. It is important to recognize that this canon does not purport to lay down an absolute rule and that, like every other canon, it is "simply one indication of meaning; and if there are more contrary indications . . . it must yield." Antonin Scalia, A Matter of Interpretation 27 (1997). The way in

_____

1. The Gendron court cited Hohn v. United States, 118 S. Ct. 1969, 1977 (1998), and McNutt v. Board of Trustees of Univ. of Ill., 141 F.3d 706, 709
(7th Cir. 1998), which both quoted Russello.

which the canon was employed in Russello illustrates how it may properly be used.

Russello concerned the interpretation of a provision of the Racketeer Influenced and Corrupt Organizations"(RICO)" statute, 18 U.S.C. S 1963(a)(1), which, at that time, authorized the forfeiture of "any interest" that a convicted RICO defendant had "acquired . . . in violation of [18 U.S.C.] S 1962," the provision setting out the activities prohibited by the RICO statute. The defendant in Russello argued that the term "interest" referred only to an interest in the RICO enterprise itself and not to profits or proceeds derived from racketeering. In rejecting this argument, the Supreme Court began with the ordinary meaning of the term "interest" and observed, after quoting several dictionary definitions, that it was "apparent that the term `interest' comprehends all forms of real and personal property, including profits and proceeds." 464 U.S. at 21. Then, as one of several reasons for rejecting the defendant's artificially narrow interpretation of the term"interest," the Court invoked the canon upon which the Gendron court relied. Noting that 18 U.S.C. S 1963(a)(1) spoke "broadly of `any interest . . . acquired,' " while the very next subsection, 18 U.S.C. S 1963(a)(2), "reache[d] only `any interest' in . . . any enterprise which [the defendant] had established[,] operated, controlled, conducted, or participated in the conduct of, in violation of section 1962,' " the Court observed that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " 464 U.S. at 23 (citation omitted). The Court added:

> We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship.

Id.

Russello, then, was a case in which the statutory language at issue had a plain meaning, an argument was made that the statutory language should be interpreted

26

more narrowly than that plain meaning, another provision of the same statute used different language to convey that narrower meaning, and the Court therefore presumed that the provision at issue meant what its language plainly stated and did not have the artificially narrow meaning explicitly set out in the other, more narrowly crafted statutory section.

The situation in the present case is quite different in several important ways. Here, the relevant language in S 2255, unlike the statutory language at issue in Russello, does not have a single, obvious meaning. Instead, as I have said, that language may be interpreted in two entirely reasonable ways. Moreover, both of these interpretations -- that a judgment of conviction becomes final by "the conclusion of direct review" and that a judgment of conviction becomes final by "the expiration of the time for seeking such review" -- are set out in S 2244(d)(1). Invoking the Russello canon, the Gendron court says that it is refusing to read into S 2255 the extra explanatory language contained in S 2244(d)(1), but actually the Gendron court in effect reads into S 2255 part of that explanatory language, viz., the part that says that a judgment of conviction becomes final "by the conclusion of direct review." 28 U.S.C. S 2244(d)(1).

The Russello canon is based upon a hypothesis of careful draftsmanship. See 464 U.S. at 23 ("We would not presume to ascribe this difference to a simple mistake in draftsmanship.") But the Gendron court's interpretation produces a result that is inconsistent with that hypothesis. According to the Gendron court, the hypothetical careful draftsman responsible for crafting S 2255 used the phrase "the date on which the judgment of conviction becomes final" to mean the date on which direct review concludes, even though a careful draftsman would have realized that this phrase is susceptible to another, entirely reasonable interpretation. Moreover, according to the Gendron court, this hypothetical careful draftsman took this approach even though he or she included in S 2244(d)(1) language that expressly conveys this very meaning, i.e., "by the conclusion of direct review." This simply does not make sense. A careful draftsman who laid S 2255 andS 2244(d)(1)

27

side by side would not have taken such an approach. Rather, a careful draftsman would have realized that, just as it was necessary in S 2244(d)(1) to explain what was meant by the date on which a judgment became final, so it was equally necessary to provide such an explanation in S 2255.

For these reasons, it seems unlikely that the disparate language in SS 2244(d)(1) and 2255 resulted from a careful drafting decision -- and this is borne out by an examination of the origins of these provisions. At the beginning of the 104th Congress, Senator Dole introduced S.3, "The Violent Crime Control and Law Enforcement Improvement Act of 1995," which among other things, proposed to reform federal habeas corpus practice. Like many prior habeas reform bills introduced during the preceding decade, Section 508 of S.3 imposed a limitation period for the filing of S 2255 motions and provided for this period to run from the latest of four dates, including "the date on which the judgment of conviction becomesfinal. See, e.g., S.238, "Reform of Federal Intervention in State Proceedings Act of 1985," 99th Cong. S 6 (1985). This language, of course, is precisely the same as that now contained in S 2255.

Another portion of section 508 provided for S 2244 to be amended to include a one-year limitation period forfiling a federal habeas petition, but this proposed amendment-- again following the pattern of prior unsuccessful habeas reform bills2 -- differed from the analogous language now in S 2244(d)(1). This proposed amendment provided for the one-year period to run from the latest of

"(1) the date on which State remedies are e xhausted;

"(2) the date on which the impediment to fili ng an application created by State action in violation of the Constitution or laws of the United States is removed, where the applicant was prevented from filing by such State action;

"(3) the date on which the Federal constitution al right asserted was initially recognized by the Supreme Court,

_____

2. See, e.g., id. S 2,

28

> where the right has been newly recognized by the Court and is made retroactively applicable; or

> "(4) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

S.3, 104th Cong. S 508 (1995) (emphasis added).

Several months after S.3 was introduced, Senators Specter and Hatch sponsored S.623, the "Habeas Corpus Reform Act of 1995," which took a different approach with respect to the date on which the limitation period should begin to run for federal habeas claims asserted by state prisoners. Instead of providing, as S.3 had, for this period to begin to run from "the date on which State remedies are exhausted," S.623 provided (as S 2244(d)(1) now does) for this period begin to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." S.623, 104th Cong. S 2 (1995). At the same time, S.623, like current S 2244(d)(2), provided for the one-year period to be tolled during the pendency of a properly filed state application for post-conviction or other collateral review. Id.

Senator Specter's remarks when he introduced S.623 suggest the reason for this new approach. Senator Specter said that it was "necessary to end the abuse in which petitioners and their attorneys" then engaged in capital cases, viz., waiting until a death warrant was signed before filing a federal habeas petition. 141 Cong. Rec. S4592 (daily ed. Mar. 24, 1995). Senator Specter also complained about "the endless delays" caused by the exhaustion requirement. Id. Based on these remarks, it is reasonable to infer that the reason for the new approach taken in S.623 was to force state prisoners, upon the completion of direct review, promptly to commence either a state post-conviction relief proceeding (which would toll the limitation period) or a federal habeas proceeding. Thus, the phrase "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" seems to have been employed to make it clear that the approach taken in S.3 and prior bills was being changed. Unfortunately, S.623 did not modify the language

29

used in S.3 and previous bills concerning the one-year period for filing S 2255 motions.

On April 19, 1995, the federal building in Oklahoma City was bombed, and on April 27, Senator Dole introduced S.735, the "Comprehensive Terrorism Protection Act of 1995." This bill incorporated the habeas reform provisions of S.623. See 141 Cong. Rec. S7597 (daily ed. May 26, 1995) (remarks of Sen. Hatch); id. at S7585 (remarks of Sen. Specter); 141 Cong. Rec. S7803 (daily ed. June 7, 1995) (remarks of Sen. Specter); 142 Cong. Rec. S3472 (daily ed. Apr. 17, 1996) (remarks of Sen. Specter). S.735 passed the Senate and the House with the relevant amendments to SS 2244(d)(1) and 2255 essentially untouched.[3]

Based on the text of SS 2244(d)(1) and 2255 and the history set out above, I conclude that S 2255's reference to "the date on which the judgment of conviction becomes final" and S 2244(d)(1)'s reference to"the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" mean the same thing. I reach this conclusion for three chief reasons: first, the statutory text strongly suggests that the difference in language did not result from a careful drafting choice; second, the legislative history suggests that this difference in language is instead a product of the vagaries of the legislative process; and third, while I think that a legislator could reasonably choose to have the one-year limitation period begin either when direct review ends or when the opportunity for direct review expires, I think it would be odd for a legislator to take one approach in cases involving federal habeas petitions filed by state prisoners and the other in cases involving S 2255 motions filed by federal prisoners. Consequently, I believe that a"judgment of conviction becomes final," within the meaning of S 2255

_____

3. No house or Senate Report was submitted, and the Conference Report contained only one brief reference to this provision. See H.R. Rep. No. 104-518, at 111, (1996) reprinted in 1996 U.S.C.C.A.N. 924, 944 ("This title . . . sets a one year limitation on an application for a habeas writ . . . .").

on the date when direct review ends and there is no opportunity for further direct review.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

31