J. Steven KAMEN, Petitioner,

v.

UNITED STATES of America,
Respondent.

Nos. 2–00–0053, 3–00–0674.

United States District Court,
M.D. Tennessee,
Nashville Division.

Dec. 8, 2000.

Kevin M. Schad, Cincinnati, OH, for petitioner.

Harold Benton McDonough, Jr., Office of the United States Attorney, Nashville, TN, for respondent.

### MEMORANDUM

WISEMAN, Senior District Judge.

Petitioner Jay Steven Kamen has filed two § 2255 petitions, seeking review of his sentences for bank fraud and threatening a federal officer. For the reasons set forth below, both petitions are denied.

### Facts

On August 5, 1996, a jury convicted petitioner Jay Steven Kamen for threatening a federal officer, and the Court sentenced him to one year in prison. On July 10, 1997, Kamen pled guilty to bank fraud and conspiracy to commit bank fraud. The Court sentenced him to twenty-four months to run consecutively to his previous one year sentence. The Court of Appeals affirmed Kamen's convictions on April 16, 1999, and issued its mandate on May 12, 1999. Kamen did not seek a writ of certiorari from the Supreme Court. On July 17, 2000, Kamen filed two habeas corpus petitions under 28 U.S.C. § 2255, one challenging the bank fraud proceedings and the other challenging the proceedings for unlawfully threatening a federal officer. The Court granted Kamen's motion to consolidate the two petitions, and they are now before the Court.

### Arguments

### I. Are Kamen's motions time-barred?

The Government asserts Kamen did not file the two motions within the proper time frame. The current version of 28 U.S.C. § 2255 imposes a one-year period of limitation for filing habeas corpus petitions and provides that this period shall run from four possible dates. Of the four, the date relevant here is the "date on which the judgment of conviction becomes final." The issue in this case concerns when the judgment of conviction becomes final for a petitioner who does not seek certiorari from the Supreme Court. The Seventh and Fourth Circuits have held that the conviction becomes final and the one-year limitation begins on the date on which the court of appeals issues its mandate. The Third, Fifth, Ninth, and Tenth Circuits have held that the conviction becomes final and the one year limitation begins when the time for filing a petition for writ of certiorari expires. If the latter rule is correct, Kamen's motion for § 2255 relief is timely; if the former rule is correct, the motion is late and will be dismissed.

### One–Year Limitation Runs from Date on which Court of Appeals Issues its Mandate.

The Seventh Circuit first addressed this issue in *Gendron v. United States,* 154 F.3d 672 (7th Cir.1998). The court noted that the Supreme Court has defined a conviction as being "final" in the context of retroactivity when "a judgment of conviction has been entered, the availability of appeal exhausted, and the time for a peti-

tion for certiorari elapsed or a petition for certiorari finally denied." *Id.* at 673–4 (citations omitted). The Seventh Circuit, however, found that Congress had exercised its own power to determine the standards for finality in § 2255. *Id.* at 674. The court reached this conclusion by comparing the language in § 2255–"The limitation period shall run from ... the date on which the judgment of conviction becomes final"-with the language in § 2244(d)(1)(A), which defines the one-year limitation period for the filing of habeas corpus by prisoners in custody pursuant to State court judgments. The limitation period under § 2244(d)(1)(A) runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." In comparing the two sections, the Seventh Circuit invoked the following canon of statutory construction: when Congress includes particular language in one section of an act but omits it in another section of the same act, the court will presume that Congress intended to exclude such language from the latter section and will not imply it. *Id.* Because Congress included "the time for seeking such review" in § 2244(d)(1)(A) but not in § 2255, the court concluded that Congress intended to treat the periods of limitation differently under the two sections; otherwise, the additional language in § 2244(d)(1)(A) would be meaningless. *Id.* Hence, the court held that for a federal prisoner who decides not to seek certiorari from the Supreme Court, the period of limitation begins to run on the date the court issues its mandate in the direct appeal. *Id.*

The Fourth Circuit followed the above reasoning in *United States v. Torres,* noting that the extra language in § 2244(d)(1)(A) expressly provides an alternative starting date for the limitation period when a state defendant fails to seek further direct review. 211 F.3d 836, 839 (4th Cir.2000). The court also found that Congress had included language taking into account the expiration of the time for seeking direct review in § 2263(a), which

establishes the limitation period for habeas petitions by state prisoners serving capital sentences. *Id.* at 840. It also noted that in drafting § 2255, Congress probably did not consider the situation where a federal defendant exercises his prerogative not to file a petition for certiorari. *Id.* at 839. The court reasoned that the conviction must become final upon issuance of the mandate because literally nothing else happens after that. *Id.* Finally, the Fourth Circuit, like the Seventh, could find no reason to assume Congress had intended to include in § 2255 the judicially created concept of finality for purposes of retroactivity. *Id.* at 841.

### One–Year Limitation Begins Running when Period for Filing Writ of Certiorari Expires.

The leading case for this view is *Kapral v. United States,* 166 F.3d 565 (3rd Cir. 1999). In *Kapral,* the Third Circuit identified several possible dates for when a judgment of conviction could become final: the date the defendant is sentenced or the judgment entered on the district court, docket; the date the court of appeals affirms the conviction and sentence or when the time for appeal expires; or the date on which the Supreme Court affirms the merits or denies a petition for certiorari, or when the time to seek certiorari expires. *Id.* at 569. The court noted that a judgment might be final when a court of appeals issues its judgment on direct review in the sense that nothing is left to be decided on the merits. However, the same could be said of the decision of the district court. *Id.* at 570. Since both judgments are subject to further review, the court decided that neither is really final within the meaning of § 2255. *Id.* As the court explained, a collateral attack is generally inappropriate if the possibility of further direct review remains open, and it does not make sense to begin the limitations period when the defendant still has ninety days to seek review by the Supreme Court. *Id.* Unlike the Fourth and Seventh

Circuits, the Third could find no reason why Congress would depart from the judicial definition of finality in the context of retroactivity. *Id.* at 572. Furthermore, commencing a collateral attack while direct review is on-going would be wasteful and inefficient if the Supreme Court granted certiorari.[1] *Id.*

The Third Circuit specifically disagreed with the reasoning of the Seventh Circuit as to the omission of § 2244's clarifying language from the mention of "final" in § 2255. *Id.* Such an omission was insufficient for the court to conclude that Congress intended to treat the concept of finality differently for state and federal defendants; the court also saw no logical reason for treating the two differently. *Id.* at 575. In fact, to support its conclusion that "finality" in the two sections should have the same meaning, the Third Circuit invoked the following rule of statutory construction: Congress intends identical words used in different parts of the same act to have the same meaning. *Id.; see also United States v. Burch,* 202 F.3d 1274, 1277 (10th Cir.2000) (rule of statutory interpretation invoked in *Gendron* is applicable only in carefully drafted legislation, and the Antiterrorism and Effective Death Penalty Act is not a model of careful statutory drafting). Hence, "finality" should mean the same thing in both sections.

Following the logic of *Kendral,* the Ninth Circuit added a further critique of the Seventh Circuit. *United States v. Garcia,* 210 F.3d 1058, 1060 (9th Cir.2000). The Ninth Circuit noted that even though the Seventh Circuit professed not to incorporate the language of § 2244(d)(1) into § 2255, it did imply at least part of the former in the latter, i.e., the language indicating that the judgment became final at "the conclusion of direct review." *Id.; see also United States v. Garcia,* 210 F.3d 1058, 1060 (9th Cir.2000) ("the canon of construction invoked by the Seventh Circuit does not apply because we cannot avoid implying at least part of the language from § 2244(d)(1) into § 2255"). The Ninth Circuit also expressed concern that beginning the limitation period three months earlier might encourage prisoners to file habeas petitions before they know all the Constitutional challenges available to them. *Id.* at 1060; *see also United States v. Burch,* 202 F.3d 1274, 1276 (10th Cir.2000) ("It would make no sense and would not further judicial efficiency or economy to encourage a collateral attack on a judgment that was subject to the possibility of direct certiorari review.").

█ For the reasons above, this Court finds the better view of "finality" under § 2255 is that announced by the Third and Ninth Circuits. It simply would not make sense to require a prisoner to begin thinking about filing a § 2255 motion when he still has the opportunity to seek direct review from the Supreme Court. Furthermore, the Court can think of no reason why Congress would chose to treat federal and state prisoners differently for purposes of habeas relief. Although the Seventh and Fourth Circuits' comparison of the language within the act is somewhat persuasive, it is also somewhat formalistic, and, as the Tenth Circuit noted in *United States v. Burch,* 202 F.3d 1274, 1277 (10th Cir.2000), unjustifiably assumes the Antiterrorism and Effective Death Penalty Act was carefully drafted legislation.

Hence, Kamen filed his petitions within the applicable time period. Since the Government has alternatively briefed the issues Kamen raises, the Court now turns to the merits of his petitions.

## II. *Has Kamen asserted any grounds that justify relief?*

█ To justify relief under § 2255, a petitioner must show " 'a fundamental de-

---

**1.** In *Torres,* the Fourth Circuit dismissed this concern because the relevant fact pattern involves prisoners who choose not to seek Supreme Court review. 211 F.3d at 842. This is unconvincing, however, because under the Fourth Circuit's view, the limitations period could begin while a prisoner is still deciding whether to file a petition for writ of certiorari.

fect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson,* 918 F.2d 627, 630 (6th Cir.1990) (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)).

Kamen claims his counsel provided ineffective assistance in both proceedings. The Supreme Court has established a two-prong test for determining whether counsel provided ineffective assistance in violation of the Sixth Amendment. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must show his counsel's performance was deficient. *Id.* at 687, 104 S.Ct. 2052. This means counsel made errors so serious that he failed to function at a reasonably professional level. *Id.* Second, the petitioner must show that the deficient performance prejudiced his defense and deprived him of a fair trial. *Id.* This requires the defendant to demonstrate a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A reasonable probability is that sufficient to undermine confidence in the outcome. *Id.* Judicial scrutiny of counsel's performance is highly deferential, and the court must avoid the distorting effects of hindsight and must try to evaluate the conduct from counsel's perspective at the time. *Id.* The petitioner must overcome the presumption that at the time of the trial the challenged strategy might have been sound *Id.* (citation omitted).

### The Proceedings for Threatening a Federal Officer

■ Kamen first argues his counsel was ineffective because he failed to request the sequestration of the Government's witnesses. Specifically, when the Court asked the parties whether they wanted the sequestration rule in effect, neither requested it. Kamen asserts "it is impossible to pinpoint how witnesses' testimony

was influenced .... Therefore, prejudice must be presumed." Such an allegation, however, cannot suffice to prove prejudice. Kamen must at least point to some particular witness whose testimony could have been affected by listening to other witnesses and who therefore might have prejudiced the outcome of his case. As the Government points out, Kamen's case did not involve several witnesses, each testifying to the same events. Rather, each witness described events that were distinct from those to which the other witnesses testified. Kamen has failed to allege and prove why his counsel should have separated any particular witnesses and why the failure to do so prejudiced the outcome of his case.

■ Kamen next argues his counsel was ineffective in persuading him to waive a jury trial and to allow the Court to try the case. As the Supreme Court noted in *Strickland,* a court evaluating the effectiveness of counsel will not second-guess counsel's tactical decisions. *Id.* at 689, 104 S.Ct. 2052. Kamen specifically admits that his counsel advised him that the judge would understand the facts of the case better than a jury. Without some showing that such advice was patently unsound, the Court cannot second-guess counsel's decision and declare it deficient. Furthermore, despite Kamen's bare assertion to the contrary, the Court remains unconvinced that a jury would have acquitted Kamen, especially given that the jury would have heard the same rather persuasive evidence the Court heard. Hence, Kamen has also failed to prove the prejudice prong of *Strickland.*

■ Kamen's claim that counsel was ineffective for not moving for a new trial based on inconsistencies in the victim impact statement must also fail. Kamen cannot prove that his counsel's failure to move for a new trial was unreasonable or that it would have had even a remote chance of being successful. He has not shown how the alleged inconsistencies are material as opposed to merely impeaching or how they

would likely produce an acquittal. *United States v. Gaitan–Acevedo,* 148 F.3d 577, 589 (6th Cir.1998). Kamen simply attacks the veracity of various statements with broad assertions that they are inaccurate; he does nothing to show how they could serve as evidence that the victim in the case gave false testimony at trial or fabricated testimony that led to a conviction.

■ Finally, Kamen argues his counsel was ineffective on appeal for failing to raise the issue of intent as contested at trial and for failing to seek a writ of certiorari from the Supreme Court on the issue of whether the trial court properly admitted evidence under Rule 404(b). The statute at issue punishes threats made by those with an "intent to impede, intimidate, or interfere with [an] official, judge, or law enforcement officer while engaged in the performance of official duties" 18 U.S.C. § 115. Kamen now tries to argue his counsel failed to appeal the proper standard for and the finding of intent. This claim is entirely foundationless because Kamen's attorney did in fact raise the issue on appeal. As stated in his appellate brief, Kamen's attorney argued. "The trial court failed to establish … that the threat was intended to impede, intimidate, or interfere with AUSA Goggin in the performance of her official duties." The Court of Appeals specifically addressed this issue in its opinion and found that this Court had in fact found such an intent beyond a reasonable doubt, as reflected in the Court's record. It is simply not clear what more Kamen thinks a reasonably competent attorney should have done to address the issue. Absent extraordinary circumstances-which are not present here-a prisoner cannot use a § 2255 petition to relitigate an issue already addressed on appeal. *DuPont v. United States,* 76 F.3d 108, 110 (6th Cir. 1996). This claim must fail.

■ Kamen also claims counsel was ineffective in failing to file a writ of certiorari with the Supreme Court. Because a prisoner does not have a constitutional right to counsel to pursue discretionary review from the Supreme Court, this claim must also fail. *McNeal v. United States,* 54 F.3d 776, 1995 WL 290233 (6th Cir. 1995) (unpublished) (citing *Ross v. Moffitt,* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974)).

Because Kamen has failed to establish any real constitutional errors that would render his trial fundamentally unfair, his cumulative error claim is likewise meritless. Also, given that the records and files of the cases are conclusive, the requested evidentiary hearing is unnecessary.

### The Proceedings for Bank Fraud

Kamen argues counsel should have filed a motion to dismiss because of pre-indictment and post-indictment delay. He argues that he suffered prejudice because of the death of a defense witness and the destruction of exculpatory records in a bankruptcy proceeding. Even assuming the delay did prejudice Kamen, he has not shown that the delay was an intentional device by the government to gain a tactical advantage. *United States v. Brown,* 959 F.2d 63, 66 (6th Cir.1992). It is extremely doubtful that the prosecution intentionally delayed the criminal proceedings in hopes that exculpatory evidence would be destroyed or witnesses would die. Particularly unconvincing is Kamen's claim that the prosecution intentionally delayed proceeding to prevent him from calling to testify his company's chief operating officer, Edward Lang, who had passed away. In truth, the prosecution had to drop a charge against Kamen related to a pre-shipment billing scheme because Lang was its key witness.

■ Kamen also argues counsel gave him erroneous information regarding the dangers of going to trial versus pleading guilty, leading to an improvident plea. Specifically, Kamen alleges counsel told him that his possible punishments were between 133 and 149 months and he has attached a 1996 letter from his former

attorney indicating that this was the case. However, in his petition to enter a guilty plea, Kamen stated he had knowledge of the particular sentencing range for each count charged. He also stated that his attorney had advised him that the guideline range in his case would be between 27 and 33 months if the judge determined the amount of loss in the case was more than $800,000. In light of this statement, Kamen was aware of the applicable sentencing range at the time of his plea and was not prejudiced by the letter from his lawyer.

■ Kamen next argues his counsel was ineffective on appeal for several reasons. First, Kamen asserts his counsel, who argued for a higher standard of proof in calculating the loss that resulted from the bank fraud, also should have argued that the amount of the loss calculation was erroneous, Kamen believes that raising this issue would have resulted in resentencing. Such an argument could well have been futile in the eyes of a reasonable attorney viewing the evidence at the time of appeal, particularly in light of the fact that the court of appeals would have reviewed the calculation for plain error. The original sentencing report approximated the loss at $2,000,000 for sentencing guideline purposes. Kamen challenged the $2,000,000 figure and the government likewise responded. Based in part upon the testimony of the senior vice president of the lending institution involved, who helped conduct the fraud investigation for his employer, the Court found the amount of actual loss (the amount of the loan not repaid reduced by the amount the institution had recovered or could recover) was more than $1.5 million by a preponderance of the evidence. Given the rather slim odds of achieving a reversal, it was reasonable for Kamen's attorney to forego this challenge in favor of others.

■ Kamen asserts his counsel was ineffective for failing to challenge this Court's misunderstanding of its authority to depart downward on the basis of his medical condition, his prison conditions, and his family situation. Even though the Court did grant a downward departure because Kamen did not take personal gain as a result of the fraud, Kamen asserts that had the Court recognized the other permissible grounds for departure, the departure would have been greater. Kamen bases his argument on the following excerpt from the sentencing hearing:

> The Court denies the request for departure, downward departure, both as to his depressive disorder—the Court finds that that did not—well, it's not a ground for departure. The over-representation of his criminal history is denied, the family circumstances is denied, and the circumstances of prior confinement is denied as grounds for departure.

Kamen misconstrues this passage. The Court was not claiming that departure on the grounds asserted was impermissible as a matter of law, as Kamen asserts; instead, the Court was denying Kamen's request to depart on these grounds in his particular case, which it has the discretionary power to do. A court of appeals will ordinarily assume that a district court has properly exercised its discretion when it denies a downward departure, and such a denial is not usually reviewable unless the district court improperly believed it lacked the authority to grant such a departure as a matter of law. *United States v. Owusu,* 199 F.3d 329, 349 (6th Cir.2000). Because the Court did not believe it lacked the authority to grant a departure on the listed grounds, Kamen's counsel did not err in deciding not to raise the issue.

Finally, because the Court can decide the merits of Kamen's petition upon the files and records of the case, the requested evidentiary hearing is unnecessary.

### Conclusion

Each of Kamen's § 2255 petitions is denied.

### ORDER

Petitioner Jay Steven Kamen has filed two § 2255 petitions, seeking review of his sentences for bank fraud and threatening a federal officer. For the reasons set forth in the accompanying memorandum, both petitions are DENIED.

It is so ORDERED.

An appropriate order will enter.