*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0035P (6th Cir.)
File Name: 03a0035p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

WILLIAM D. WICKLINE,
  *Petitioner-Appellant,*

  *v.*

No. 98-4280

BETTY MITCHELL, Warden,
  *Respondent-Appellee.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 96-00291—James L. Graham, District Judge.

Argued: September 18, 2002

Decided and Filed: January 30, 2003

Before: MARTIN, Chief Circuit Judge; SILER and
DAUGHTREY, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** David C. Stebbins, Columbus, Ohio, for
Appellant. Norman E. Plate, ATTORNEY GENERAL'S
OFFICE OF OHIO, CAPITAL CRIMES SECTION,
Columbus, Ohio, for Appellee. **ON BRIEF:** David C.
Stebbins, Columbus, Ohio, Benson A. Wolman, WOLMAN,
GENSHAFT & GELLMAN, Columbus, Ohio, for Appellant.
Norman E. Plate, ATTORNEY GENERAL'S OFFICE OF

OHIO, CAPITAL CRIMES SECTION, Columbus, Ohio, for Appellee.

———————————

**OPINION**

———————————

SILER, Circuit Judge.  Petitioner William D. Wickline, an Ohio death row inmate, appeals the denial of his Rule 59(e) motion to alter or amend the district court's judgment dismissing his petition for a writ of habeas corpus.  For the following reasons, we AFFIRM.

### I.  BACKGROUND

Wickline was convicted by a three-judge court of two counts of aggravated murder, for the deaths of Christopher and Peggy Lerch.  The panel sentenced Wickline to life imprisonment on one count and to death on the other.  After unsuccessful direct appeals and state post-conviction proceedings, Wickline filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Finding that Wickline's forty-two claims were either procedurally defaulted or lacked sufficient merit to warrant granting the writ, the district court dismissed his petition.  Both Wickline and respondent (the "State") filed motions to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e).  The district court granted the State's motion and amended the judgment to hold that the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), is applicable to Wickline's petition.  Wickline's Rule 59(e) motion was denied.

### II.  STANDARD OF REVIEW

**A.  AEDPA**

In a habeas proceeding, this court reviews a district court's legal conclusions *de novo* and its factual findings for clear error.  *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999).

weigh the aggravating circumstances.  In addition, the supreme court merged the duplicative aggravating circumstances and independently weighed the merged aggravating circumstance against the mitigating factors.  Accordingly, no constitutional violation is stated.  *Fox v. Coyle*, 271 F.3d 658, 667 (6th Cir. 2001), *cert. denied*, 70 U.S.L.W. 3758 (U.S. Oct. 7, 2002) (No. 01-1754).  Wickline's claim that the Ohio Supreme Court failed to grant him meaningful proportionality review of his death sentence also fails.  Because "proportionality review is not required by the Constitution, states have great latitude in defining the pool of cases used for comparison."  *Buell*, 274 F.3d at 369.  In limiting proportionality review to previous cases in which the death penalty has been imposed, the Ohio Supreme Court has acted within the wide latitude allowed.  *See id.*  Therefore, the Ohio Supreme Court did not err in failing to compare Wickline's sentence to other cases in which the death penalty was not imposed.

**AFFIRMED**.

Court rejected Wickline's *Brady* claims, as did the district court. Both the district court and this court declined to grant a certificate of appealability as to the *Brady* claims, demonstrating that Wickline has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Any constitutional errors, considered cumulatively, were not so great as to render Wickline's trial fundamentally unfair or his sentence and conviction unreliable.

Wickline's various arguments that the Ohio death penalty scheme is unconstitutional likewise fail. His assertions that the statute creates a mandatory death penalty and allows trial courts to apply the death penalty in an arbitrary, capricious, and discriminatory manner were rejected in *Buell v. Mitchell*, 274 F.3d 337, 367-68 (6th Cir. 2001). With regard to Wickline's argument that the statute grants prosecutors broad discretion as to whether to seek capital indictments, thereby allowing arbitrary charging decisions, the Supreme Court held in *Gregg v. Georgia*, 428 U.S. 153, 199 (1976), that these "discretionary stages" do not implicate the concerns expressed in *Furman v. Georgia*, 408 U.S. 238 (1972). Wickline's contention that Ohio's death penalty scheme encourages capitally charged defendants to waive their right to a jury trial and to plead guilty is procedurally defaulted, and, in the alternative, fails because (1) Wickline did not plead guilty, and (2) the Supreme Court has found that pleas are not invalid simply because of the possibility of the death penalty. *See Brady v. United States*, 397 U.S. 742, 751 (1970).

Wickline's arguments that the trial court improperly considered duplicative aggravating circumstances and that Ohio's appellate review did not cure any error are unavailing. Both Supreme Court precedent and Ohio law allow reweighing by the appellate courts when the sentencer has considered an invalid aggravating circumstance. Here, the Ohio Supreme Court assumed that the three-judge panel did not "artificially inflate" the aggravating circumstances, implicitly concluding that the trial court did not improperly

Because Wickline filed his habeas petition on May 31, 1996, after the effective date of AEDPA, this court reviews the petition under the standards set forth in AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Williams v. Coyle*, 167 F.3d 1036, 1040 (6th Cir. 1999) ("[A] federal habeas corpus case is filed or pending for the purposes of *Lindh* and the AEDPA only when the petition for the writ is filed.").[1] As amended, 28 U.S.C. § 2254(d) provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[1] Wickline's first issue on appeal is whether the district court erred in applying AEDPA to his habeas petition. He argues that because he filed a notice of intent and a motion for appointment of counsel prior to April 24, 1996, AEDPA's effective date, his petition was pending on that date. The Sixth Circuit rejected this argument in *Williams v. Coyle*, 167 F.3d 1036 (6th Cir. 1999). Wickline's argument that the Sixth Circuit's reasoning in *Williams* has been overruled by a subsequent Supreme Court case, *Slack v. McDaniel*, 529 U.S. 473 (2000), was rejected in a recent Sixth Circuit death penalty case, *Cooey v. Coyle*, 289 F.3d 882 (6th Cir. 2002), *petition for cert. filed* (U.S. Sept. 24, 2002) (No. 92-212). Accordingly, this court will follow *Williams* and apply AEDPA to Wickline's habeas corpus petition. *See also Martin v. Mitchell*, 280 F.3d 594, 602 (6th Cir. 2002), *cert. denied*, No. 00-3357/3359, 2002 WL 1579244 (U.S. Nov. 4, 2002) (holding AEDPA applicable when petition was filed in June 1996 but motion to stay execution was filed in November 1995).

28 U.S.C. § 2254(d). "The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta," of the Supreme Court. *Id.* at 412.

## B.   Procedural Default

The district court concluded that many of Wickline's claims are procedurally defaulted for failure to raise them at the earliest opportunity. When a petitioner defaults on his "federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), this court set forth a four-step analysis for determining whether a petitioner's federal constitutional claims are barred by the petitioner's failure to follow a state procedural rule.[2]

[2]First, the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and with which the petitioner failed to comply. *Id.* at 138. "Second, the court must decide whether the state courts actually enforced the state procedural sanction." *Id.* Third, the court must determine whether the state procedural rule "is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim." *Id.* (internal quotation marks omitted). "A procedural rule is adequate only when it is firmly established and regularly followed at the time it was applied . . . . [and is] an independent basis for disposition of a case if the state courts actually relied on the procedural bar." *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001). Finally, if the court answers the first three questions in the affirmative, it will not review the procedurally defaulted claim unless the petitioner can show cause for not following the procedural rule and actual prejudice resulting from the alleged constitutional violation. *Maupin*, 785

Finally, Wickline raises a host of other claims on appeal, all of which are unavailing. His claims of prosecutorial misconduct are procedurally defaulted and, in the alternative, fail on the merits.[5] Specifically, Wickline asserts that during the penalty phase, the prosecutor (1) inflamed the passions and prejudices of the three-judge panel, (2) created nonstatutory aggravating circumstances, and (3) improperly commented on his right to remain silent. The first argument fails because the prosecutor's statements are not likely to have misled the three-judge panel or prejudiced Wickline. With regard to the second assertion, even assuming that the prosecutor's arguments were improper, the panel did not list Wickline's extensive criminal history, the absence of mitigating factors, or behavior in prison as aggravating circumstances. Wickline's third assertion fails because the prosecutor's reference to the unsworn nature of his testimony was isolated, is not likely to have misled the three-judge panel or prejudiced him, and did not render the entire trial and sentencing fundamentally unfair. Further, the prosecutor's isolated comment regarding an absence of remorse was not manifestly intended to reflect on Wickline's failure to testify, nor would the panel have understood the statement as such.

Wickline claims that even if no single error is sufficient to merit granting the writ, the cumulative effect of the errors rendered his trial fundamentally unfair. According to Wickline, the cumulative effect is most pervasive with respect to the discovery and *Brady* violations. The Ohio Supreme

[5]Ohio's contemporaneous objection rule required Wickline to object to the prosecutor's statements at trial, which he failed to do. The Ohio Supreme Court's review for plain error constitutes enforcement of this procedural rule, which this court has recognized as an adequate and independent state ground barring federal habeas review. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). Wickline has failed to demonstrate that there is a "reasonable probability" that, but for his counsel's failure to object to the prosecutor's comments, the result of the sentencing proceeding would have been different. *See Strickland*, 466 U.S. at 694. Therefore, Wickline has not shown constitutionally ineffective assistance excusing his failure to comply with the contemporaneous objection rule.

obtain expert and investigative assistance for the trial phase is also procedurally defaulted, because he never presented the claim on direct appeal, raising it for the first time in his state post-conviction proceedings. Even if this claim was not procedurally defaulted, the Ohio Court of Appeals' alternative ruling, that the claim fails on the merits, is not contrary to or an unreasonable application of the prejudice prong of *Strickland*.

Wickline further asserts that he received ineffective assistance of appellate counsel ("IAAC"). His claims in this regard are procedurally defaulted due to his failure to comply with the rule set forth in *State v. Murnahan*, 584 N.E.2d 1204 (Ohio 1992), and codified in Ohio R. App. P. 26(B). In *Murnahan*, the Ohio Supreme Court held that IAAC claims are not cognizable in post-conviction proceedings pursuant to Ohio Rev. Code § 2953.21 but must be raised in a motion for reopening before the court of appeals, within ninety days from journalization of the appellate judgment, pursuant to Ohio R. App. P. 26(B). Wickline failed to comply with Rule 26(B) since he filed his motion to reopen on November 14, 1994-- six years after his appellate judgment was journalized, two years after *Murnahan* was decided, and sixteen months after Rule 26(B) became effective--and failed to demonstrate good cause for that delay. Even if Wickline's IAAC claims were not procedurally defaulted, his claims fail on the merits. Wickline contends that his appellate counsel was constitutionally ineffective for failing to raise the following issues on direct appeal: (1) the three-judge panel's knowledge of inadmissible, prejudicial information; (2) extensive prejudicial media coverage and the failure to request a change of venue; (3) arbitrary and capricious application of the death penalty; (4) failure to request defense experts; (5) Ohio Supreme Court's application of a lesser standard of proof for harmless error; and (6) failure to present mitigating evidence. Each of the six allegedly omitted issues either lacks merit or was raised by appellate counsel on direct appeal. As such, Wickline has failed to show that he was denied effective assistance of counsel on appeal.

"Whether a state court rested its holding on procedural default so as to bar federal habeas review is a question of law," reviewed *de novo*. *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). This court looks to the last explained state-court judgment when answering that question. *Id.*

### III.  DISCUSSION

#### A.   Ineffective Assistance of Counsel

While Wickline asserts a number of grounds for relief in his petition, the parties focused primarily on one issue at oral argument – alleged ineffective assistance of trial counsel. We will therefore address that issue first. Wickline claims that his trial counsel was ineffective in several areas, most notably in the alleged failure to investigate or present mitigating evidence. Under *Strickland v. Washington*, 466 U.S. 668 (1984), a violation of the right to effective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To demonstrate that counsel's performance was deficient, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, he "must show that there is a reasonable

F.2d at 138-39.

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. There is no question that *Strickland* qualifies as clearly established federal law under AEDPA. *Williams v. Taylor*, 529 U.S. at 391.

Wickline argues that his trial counsel was ineffective for failing to investigate and present mitigating evidence at the penalty phase. According to Wickline, his counsel should have investigated his mental health history and presented expert testimony on his psychological condition. Wickline also asserts that counsel should have investigated and presented evidence of his history, character, and background as mitigating evidence. The Ohio Supreme Court rejected Wickline's argument, noting that, unlike most cases, the record contained a statement of counsel's strategy, which led the court to conclude that "the manner in which appellant was represented at the mitigation phase was the result of an informed and tactical strategy." *State v. Wickline*, 552 N.E.2d 913, 925 (Ohio 1990). The court did not find that the sentencing decision would have differed, even assuming counsel's performance was deficient.

Under the Ohio death penalty scheme,

a capital defendant found guilty of a death specification has to present *some* mitigating evidence in order to avoid the death penalty. If a jury has nothing to weigh against the aggravating circumstance, it almost certainly must find that the aggravating circumstance outweighs the (nonexistent) mitigating circumstances, and recommend death.

*Mapes v. Coyle*, 171 F.3d 408, 426 (6th Cir. 1999) (emphasis in original). "[W]hen a client faces the prospect of being put to death unless counsel obtains and presents *something* in mitigation, minimal standards require some investigation." *Id*. (emphasis in original). Consequently, this court has held that failure to investigate possible mitigating factors and failure to present mitigating evidence at sentencing can

## B.   Other Arguments

Wickline's allegations that his trial counsel was ineffective in other areas are likewise without merit. He contends that his counsel was unable to prepare for trial or to properly advise him on the issue of jury waiver due to the state's discovery violations. The Ohio Supreme Court rejected this argument, finding that Wickline was not prejudiced by the alleged discovery violations, and, therefore, he was not prejudiced by any ineffectiveness of counsel resulting from those alleged discovery violations. This implied conclusion was not contrary to or an unreasonable application of *Strickland*.[4] Wickline also asserts that there were many deficiencies in the trial phase caused by his counsel's allegedly substandard performance. This assertion is without merit, in that (1) the record demonstrates that trial counsel did not concede the element of prior calculation and design; (2) Wickline has failed to present any evidence to overcome the presumption that the three-judge panel ignored any improper evidence counsel failed to redact from his *Brady* motion; and (3) Wickline has not shown that his counsel's conduct fell below a standard of objective reasonableness regarding his decision to call Jay McCarty as a witness. Wickline's argument that his trial counsel was ineffective in failing to request a change of venue is procedurally defaulted; even if it were not, however, this claim fails because Wickline was tried by a three-judge panel, rather than a jury, and he has failed to present any evidence that the panel was prejudiced by pretrial publicity. Likewise, the argument that Wickline was denied effective assistance of counsel in the failure to

---

given the opportunity to develop a factual record in the state courts, Wickline is not entitled to an evidentiary hearing in federal court.

[4] Wickline's claims pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), are not before this court. The Ohio Supreme Court rejected those claims, and the district court agreed that Wickline was not prejudiced by the alleged discovery violations. Both the district court and this court declined to grant a certificate of appealability with respect to the *Brady* claims.

Finally, Wickline claims that his trial counsel erred in not presenting any evidence regarding his allegedly troubled upbringing. He vaguely states that his relationship with his father "was crucial to his development and the way he handled frustration and rage." Wickline also asserts that the death of his mother "devastated him." The State contends that Wickline's family experiences do not provide a justification or explanation for this crime. *See State v. Dickerson*, 543 N.E.2d 1250, 1261 (Ohio 1989) ("While these experiences are unfortunate, they are not uncommon. It takes no citation of authority to state that many other people have endured similar experiences without resort to lawlessness.").

Wickline has failed to demonstrate that there is a "reasonable probability" that, but for his trial counsel's failure to present this evidence, the result of the penalty phase would have been different. Therefore, his claim that his counsel was ineffective for failing to investigate and present mitigating evidence fails *Strickland*'s prejudice prong. The Ohio Supreme Court's determination that Wickline's counsel was not deficient at the penalty phase and that even if it were, the sentencing decision would not have been different is not contrary to or an unreasonable application of *Strickland*. Accordingly, Wickline is not entitled to any relief on this ground.[3]

---

[3] At oral argument, the parties disputed whether Wickline had requested an evidentiary hearing in district court on his ineffective assistance of counsel claim. In a document submitted after oral argument, Wickline contends that his request of an evidentiary hearing is indicated by the district court's order of September 21, 1998, which specifically addressed Wickline's argument (in his motion to alter or amend) that the district court should not have denied his habeas petition without holding an evidentiary hearing on a number of issues, including his ineffective assistance of counsel claim. The district court held that Wickline had not shown that this claim was not fairly considered by the state courts, nor that additional evidence demonstrating ineffective assistance of counsel would be produced in any evidentiary hearing before it. As stated above, an evidentiary hearing was conducted in the trial court on Wickline's motion for a new trial, at which his counsel testified. Despite this fact, there has never been any proffer of evidence, nor any affidavit, regarding any additional mitigating facts in Wickline's history. Because he was

constitute ineffective assistance of counsel. *See Coleman v. Mitchell* (*Coleman II*), 268 F.3d 417, 445-53 (6th Cir. 2001), *cert. denied*, 122 S.Ct. 1639 (2002); *Skaggs v. Parker*, 235 F.3d 261, 269, 271 (6th Cir. 2000), *cert. denied*, 122 S.Ct. 322 (2001); *Carter v. Bell*, 218 F.3d 581, 600 (6th Cir. 2000).

After being convicted and sentenced to death, Wickline moved for a new trial based in part on his counsel's failure to investigate mental health evidence. At a hearing before the original three-judge panel, Dan Hunt, one of Wickline's trial attorneys, testified regarding his strategy at the penalty phase. Before trial, counsel hired a private investigator who had been a homicide detective with the Columbus Police Department for twenty years. According to Hunt, this investigator interviewed "just about everybody." Wickline's trial counsel personally interviewed key witnesses, including Wickline's brother and his common law wife. Hunt's co-counsel, John Wolery, who had represented Wickline for many years, knew Wickline's friends and talked with his father. Although counsel did not perform a separate mitigation investigation, counsel testified that their pretrial investigation was conducted for both guilt phase and mitigation phase purposes, and that he could not separate the two.

After the three-judge panel returned a guilty verdict, Wickline's counsel turned to the mitigation statute and the section of the Ohio Public Defender's manual dealing with the mitigation hearing. Counsel went through each mitigating factor with Wickline. Counsel advised Wickline that he could have a psychiatric report, but counsel chose not to have one for two reasons. First, Wickline "wanted nothing to do with psychiatrists or psychologists." Second, counsel felt that a psychiatric report would reflect negatively on Wickline. Counsel also advised Wickline that a presentence report delving into his background could be prepared. Again, Wickline "wanted nothing to do with the probation officer." Counsel requested to speak with Wickline's family. According to Hunt, Wickline "was very strong on this, he did not want to drag his family into this thing, and basically told us no as far as his family was involved." Counsel was also

concerned that if they put witnesses on the stand testifying to Wickline's good character, it would open the door for the prosecution to bring in evidence of bad acts committed by him and that such evidence would greatly damage any mitigating factors they presented. Counsel reviewed Wickline's prison files but chose not to present them to avoid highlighting his numerous incarcerations.

After two or three meetings to discuss their strategy, Wickline and his counsel decided to argue that Christopher and Peggy Lerch facilitated the murders by attempting a drug rip-off. The three-judge panel had already rejected Wickline's primary defense – that no murders had taken place. Counsel felt that it would be best to focus on their strongest mitigating factor, avoid the danger of opening the door to harmful information, and not "cloud it up with stuff we couldn't prove." Hunt testified that Wickline made the final decision to proceed as they did.

In *Strickland*, the Supreme Court noted that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland*, 466 U.S. at 691. Furthermore, "[a]n attorney's conduct is not deficient simply for following his client's instructions." *Coleman v. Mitchell* (*Coleman I*), 244 F.3d 533, 545 (6th Cir.), *cert. denied*, 122 S.Ct. 405 (2001), and *cert. denied*, 122 S.Ct. 1595 (2002).

Here, Wickline's counsel investigated prior to trial, hiring a private investigator to interview persons with knowledge about the case and personally interviewing key witnesses. This investigation was performed for the purposes of both the guilt phase and the penalty phase. After the panel returned a guilty verdict, counsel discussed mitigation strategy with Wickline two or three times. Wickline did not want to speak with a psychiatrist or a probation officer or involve his family. Consequently, Wickline and his counsel reached the decision

to focus on their strongest mitigating factor--that the Lerches facilitated the murders by participating in drug dealing and attempting a drug rip-off. Wickline made the final decision to proceed with this strategy. Based on the record evidence of Wickline's strategic choices, counsel's investigation and presentation of mitigating evidence did not fall below an objective standard of reasonableness. *See Coleman I*, 244 F.3d at 545-46 (holding that petitioner was not deprived of the right to effective assistance of counsel at sentencing where petitioner did not cooperate with counsel regarding the investigation and identification of mitigating evidence, imposed restrictions upon counsel, and refused to submit to further psychological or psychiatric testing). *But see Coleman II*, 268 F.3d at 452 (finding that "counsel's performance, given the combination of Petitioner's uninvestigated personal history and the consequently deficient penalty phase closing argument, to be objectively unreasonable").

Even if counsel were deficient in investigating and presenting mitigating evidence, Wickline fails to satisfy the prejudice prong of *Strickland*. Wickline argues that his trial counsel could have presented mental health evidence. The mental health evidence submitted with his petition for post-conviction relief indicates that Wickline did not suffer from any mental condition relevant to the murders of the Lerches. The records state that "[t]here is no evidence of a thought disorder or psychotic reaction," that "[p]sychological testing reveals that he is functioning in the superior range of general intelligence," and that he has an IQ of 124. The mental health evidence indicates that Wickline suffered from depression; however, there is no evidence that his depression affected his conduct here. *See State v. White*, 709 N.E.2d 140, 161 (Ohio 1999) ("In contrast, defendant's mild depression was undisputed, but it is unclear what role (if any) it played in these crimes. This is, at best, a weak mitigating factor."). Wickline also argues that his trial counsel should have introduced evidence of his good behavior during prior incarcerations. Counsel reviewed Wickline's prison records and decided not to present them because they would highlight Wickline's extensive criminal history.