Chester WALENDZINSKI, Petitioner,

v.

Paul RENICO, Respondent,

No. CIV. 04–40032.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 31, 2005.

---

Richard B. Ginsberg, Ann Arbor, for Chester Walendzinski, MI, Petitioner.

Brad H. Beaver, Michigan Department of Attorney General, Habeas Corpus Division, Brenda E. Turner, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Paul Renico Warden, Respondent.

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

GADOLA, District Judge.

Chester Walendzinski, ("petitioner"), presently confined at the St. Louis Correctional Facility in St. Louis, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed through counsel, petitioner challenges his conviction of first-degree felony murder under M.C.L. 750.316 and conspiracy to commit unarmed robbery under M.C.L. 750.530. For the reasons stated below, the Court will deny the application for writ of habeas corpus.

### I. Background

Petitioner was convicted of the above offenses following a non-jury trial in Marquette County Circuit Court. Petitioner's co-defendant, Jason Wojciechowski, was tried separately by a jury and convicted of the same offenses. Petitioner's convictions arose from the death of Robert Brey in a motel room in Marquette, Michigan. Brey had gone to the motel room to purchase marijuana from petitioner and the co-defendant. A witness saw Brey in possession of a large sum of money before he went to the motel. Instead of purchasing marijuana, Brey was choked, beaten, and

kicked in the head. Petitioner and the co-defendant checked out of the motel room just before Brey's body was discovered. No money was discovered on Brey's person.

The motel room in which Brey was killed had been registered in the co-defendant's name. Because the co-defendant had given a Chicago area address to the motel, the police in Marquette requested assistance from the Chicago Police Department. Petitioner and the co-defendant were arrested in Chicago. Both men possessed large sums of money. While in the custody of the Chicago Police Department, petitioner made a statement to Detective Richard Maher. Detective Maher testified that petitioner admitted that he set Brey up to be robbed, but changed his mind when Brey came to the motel room. Petitioner also admitted to being present in the motel room when Brey was assaulted by the co-defendant.

The evidence at trial established that Brey died as a result of blunt force injuries to the head. Doctor Randolph Smith, the Marquette County Medical Examiner, testified that he performed the autopsy on Brey. Dr. Smith concluded that Brey had been kicked in the face, that the kick contributed to his death, and that the bruise pattern on Brey's face matched the pattern on boots that had been worn by petitioner on the day Brey was murdered. A defense expert, Dr. Werner Spitz, disputed these findings, specifically the finding regarding the boot eyelet patterns. A prosecution rebuttal witness, Dr. David Stuart, concurred with Dr. Smith's opinion that the marks on Brey's face matched petitioner's boots.

Petitioner testified in his own defense. He admitted that he came to Marquette to swindle money from prospective drug buyers; he had not brought any marijuana with him. Petitioner admitted that he made several calls to people in Marquette, including several prosecution witnesses, to set up bogus drug deals. He stated that his intention was to "somehow part [the men] from their money."

Petitioner further testified that he and the co-defendant had discussed robbing Brey. Petitioner admitted that he invited Brey over to the motel room on the day of the murder. Although petitioner had originally planned to rob Brey, he testified that he decided not to go through with it. Petitioner testified that it was the co-defendant who assaulted and beat Brey when he came to the motel room. Petitioner denied hitting or kicking Brey. Petitioner acknowledged that he never attempted to obtain medical assistance for the victim. Instead, petitioner proceeded to the motel front desk and checked out. Petitioner acknowledged that he left Brey in the room not knowing whether or not he was conscious.

Petitioner's convictions were affirmed on appeal. *People v. Walendzinski*, 225043, 2002 WL 1160916 (Mich.App. May 31, 2002); *lv. den.* 467 Mich. 951, 656 N.W.2d 531 (2003); *reconsideration den.* 467 Mich. 951, 662 N.W.2d 755 (2003). Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. The Sixth and Fourteenth Amendments require that the writ be granted because trial counsel's deficient performance denied petitioner the effective assistance of counsel [because] counsel's performance fell below an objective standard of reasonableness and petitioner was actually prejudiced by counsel's deficient performance.

II. The Fifth and Fourteenth Amendments require that the writ be granted because petitioner's inculpatory statement was the fruit of an illegal arrest and was not knowingly, voluntarily, and intelligently made under the totality of the circumstances.

## II. Standard of Review

■ The Court reviews the petition under the standard of 28 U.S.C. § 2254(d):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S.Ct. 1495.

## III. Discussion

### A. The ineffective assistance of counsel

Petitioner first claims that he was denied the effective assistance of trial counsel. To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

■ Petitioner first claims that his trial counsel was ineffective for advising him to waive his trial by jury and agree to a bench trial in front of the judge who had presided over his pre-trial suppression hearing and at the co-defendant's jury trial. In rejecting this claim, the Michigan Court of Appeals noted that a trial judge is presumed to be fair and impartial, as well as to possess an understanding of the law that would allow the judge to ignore errors and decide a case on the evidence that was properly admitted at trial. The Michigan Court of Appeals noted that trial counsel testified at the hearing required by *People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922 (1973), that, after observing the co-defendant's jury trial, he concluded that a bench trial would be more beneficial to petitioner,

even though the same trial judge presided over the pre-trial hearing and had denied petitioner's motion to suppress his inculpatory statement. The Michigan Court of Appeals concluded that counsel's decision to recommend that petitioner proceed with a bench trial constituted trial strategy that they would not second-guess. *People v. Walendzinski*, 2002 WL 1160916, *2. The Michigan Court of Appeals further held that petitioner failed to demonstrate prejudice, because he failed to demonstrate that if he had been tried by a jury, the result would have been different. *Id.*

■ A defense counsel's decision to waive a defendant's right to jury and proceed with a non-jury trial is a "classic example of strategic trial judgment" for which *Strickland* requires highly deferential judicial scrutiny. *See Hatch v. State of Okla.*, 58 F.3d 1447, 1459 (10th Cir.1995). Counsel's advice to his client to waive his jury "constitutes a conscious, tactical choice between two viable alternatives." *Id.* In this case, petitioner's trial counsel could have reasonably believed that it was better strategy for petitioner to be tried by the judge rather than a jury; petitioner has failed to offer evidence to the contrary. *See Willis v. Smith*, 351 F.3d 741, 746 (6th Cir.2003).

■■ Moreover, petitioner has failed to show that he was prejudiced by counsel's recommendation to proceed with a bench trial, because he has presented no evidence that the trial judge was biased against him in any way. *Willis v. Smith*, 351 F.3d at 746. A bench trial judge is presumed to have considered only relevant and admissible evidence in reaching his or her decision. *United States v. Joseph*, 781 F.2d 549, 552 (6th Cir.1986); *see also Brown v. Pitcher*, 19 Fed.Appx. 154, 157 (6th Cir. 2001). In this case, the trial judge indicated in his findings of fact that he was basing his decision only on the evidence admitted at trial and noted specifically that

he was deciding the case against petitioner separately from the previous trial and charges involving the co-defendant. (T. VII, pp. 1143, 1149, 1152). Petitioner has failed to show that the trial court considered any inadmissible evidence obtained from the co-defendant's trial in reaching a verdict in this case. Finally, trial counsel's advice to petitioner to waive a jury trial and to proceed with a non-jury trial did not prejudice petitioner, where it was unlikely that a jury would have acquitted petitioner after hearing the same persuasive evidence that the trial court heard. *See Kamen v. United States*, 124 F.Supp.2d 603, 607 (M.D.Tenn.2000).

■ Petitioner next claims that his counsel was ineffective for failing to move for a change of venue based on the pre-trial publicity of the case. In rejecting this claim, the Michigan Court of Appeals noted that the existence of pre-trial publicity by itself does not necessitate a change of venue. Instead, a defendant must show that a strong community feeling exists against him, "or publicity that is so extensive and inflammatory that jurors could not remain impartial." *People v. Walendzinski*, 2002 WL 1160916, *2. The Michigan Court of Appeals noted that trial counsel testified at the *Ginther* hearing that he had considered a motion for change of venue and had determined, as a matter of trial strategy, that such a motion would not have been successful. In making this determination, trial counsel considered the possibility that jurors would admit bias and the fact that defendant would testify before the trier of fact to present his version of events. *Id.* The Michigan Court of Appeals further ruled that petitioner failed to demonstrate prejudice because he failed to show that the results of the trial likely would have been different had a change of venue been obtained. *Id.*

To establish ineffective assistance of counsel for failing to move for a change of venue due to prejudicial pre-trial publicity, a defendant must show that the trial court would have granted a change of venue motion; this requires a showing of the jury's actual or presumed prejudice. *Dell v. Straub,* 194 F.Supp.2d 629, 649 (E.D.Mich.2002). In the present case, there was no jury because the case was a bench trial. *See e.g. Wickline v. Mitchell,* 319 F.3d 813, 822 (6th Cir.2003). Petitioner has failed to show any prejudice because of pre-trial publicity and is therefore unable to establish that counsel was ineffective for failing to request a change of venue. *Id.* Petitioner was therefore not denied the effective assistance of counsel.

### B. The involuntary statement

Petitioner next contends that his statement to the Chicago Police Department should have been suppressed as fruit of an illegal arrest and as not made knowingly, voluntarily, or intelligently. Prior to trial, petitioner moved to suppress his statement on a number of grounds. After hearing testimony from witnesses, the trial court denied the motion to suppress.

A federal habeas review of a petitioner's arrest or search by state police is barred if the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell,* 428 U.S. 465, 494–95, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); *Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir.2000). For such an opportunity to have existed, the state must have provided a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray,* 674 F.2d 522, 526 (6th Cir.1982). On federal habeas review, a federal court cannot re-examine a petitioner's Fourth Amendment claim that post-arrest statements

should have been suppressed as "poisonous fruit" of his illegal arrest, if the state provided an opportunity for full and fair litigation of the habeas petitioner's Fourth Amendment claim prior to trial. *Monroe v. Smith,* 197 F.Supp.2d 753, 766 (E.D.Mich.2001). Petitioner is also unable to raise a Fourth Amendment claim that his confession was the product of an illegal arrest if he raised the factual basis for this claim in the state trial and appellate courts, and the state courts thoroughly analyzed the facts and applied the proper constitutional law in rejecting his claim. *Id.; see also Lovely v. Jackson,* 337 F.Supp.2d 969, 976 (E.D.Mich.2004). Accordingly, petitioner's claims are barred from review in this case.

Petitioner next claims that the trial court made an erroneous credibility determination regarding petitioner's allegation that he had requested to speak with an attorney prior to making his statement to Detective Maher. Once an accused has expressed his desire to deal with the police only through counsel, he is not to be subjected to further interrogation until counsel has been made available to him or her, unless the accused initiates further communication with the police. *Edwards v. Arizona,* 451 U.S. 477, 484–85, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). At petitioner's suppression hearing, Detective Maher denied that petitioner requested to speak with an attorney prior to making his inculpatory statement. The trial court found this version of events to be more credible. A federal court presumes the correctness of state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption. *Bailey v. Mitchell,* 271 F.3d 652, 656 (6th Cir.2001); 28 U.S.C. § 2254(e)(1). A state court's finding that a habeas petitioner did not make an unequivocal request for counsel and that the

statement was voluntarily made is entitled to the presumption of correctness, if the petitioner fails to present clear and convincing evidence to rebut that presumption. *See Pritchett v. Pitcher*, 117 F.3d 959, 963 (6th Cir.1997). Not having provided such clear and convincing evidence, petitioner is not entitled to challenge the trial court's credibility determination on habeas review.

■■■■■ Petitioner also contends that his statement should have been suppressed because it was not made voluntarily or intelligently. In determining whether a confession is voluntary, the ultimate question for a court is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). These circumstances include:

1. police coercion (a "crucial element");
2. the length of interrogation;
3. the location of interrogation;
4. the continuity of the interrogation;
5. the suspect's maturity;
6. the suspect's education;
7. the suspect's physical condition and mental health;
8. and whether the suspect was advised of his or her *Miranda* Rights.

*Withrow v. Williams*, 507 U.S. 680, 693–94, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993). All of the factors involved in the giving of the statement should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). If there is no coercive police activity, a confession should not be deemed involuntary. *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause").

In the present case, petitioner has failed to show that the state trial and appellate courts' determination that his statement was voluntarily made was unreasonable. Although petitioner was detained for a total of twenty-two to twenty-three hours, petitioner was only questioned twice by the police for brief periods of time totaling no more than forty-five minutes during the first interrogation and about the same amount of time for the second interrogation. Petitioner received his *Miranda* warnings each time before being questioned by the police. Petitioner was provided with food, water, and bathroom facilities. Although there was no bed in the interview room that he was placed in, the state trial court found that the room contained a bench that petitioner could sleep on. The state courts' determination that petitioner's statements were voluntarily given was not an unreasonable application of clearly established federal law, since the interrogation sessions were of brief duration, the police did not use any "particularly coercive or heavy-handed interview techniques" with petitioner, the state trial court concluded that there was no evidence that he was intimidated or abused in any way, and petitioner appeared to understand his constitutional rights. *See Hardaway v. Young*, 302 F.3d 757, 766–67 (7th Cir.2002). Finally, there is no evidence that petitioner was deprived of necessary food, medical care, sleep, or other essentials while in custody. *See Payne v. Smith*, 207 F.Supp.2d 627, 646 (E.D.Mich. 2002).

■■■■ Petitioner also claims that he confessed to the police because the police indicated that things would go better for him or they could help him if he made a statement. Specifically, petitioner claimed that Detective Maher told him that he would talk with the prosecutors and explain petitioner's side of the story, if he

gave the police a statement. Promises by a police officer to bring a defendant's cooperation to the attention of the prosecutor do not render a confession involuntary. *See United States v. Walker,* 272 F.3d 407, 412 (7th Cir.2001). Accordingly, petitioner has failed to establish that his statement to the police was involuntarily made.

■ Moreover, even assuming that the trial court erred in admitting petitioner's statement into evidence, this would still not entitle him to relief. For purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). In this case, petitioner's statements to the police, even if involuntary, were harmless in view of the fact that the contents of the statements were substantially identical to petitioner's testimony at trial. *See, e.g., Meade v. Cox,* 438 F.2d 323, 325 (4th Cir.1971). Accordingly, petitioner is not entitled to habeas relief on his claim.

### IV. *ORDER*

Accordingly, the Court **DENIES** the petition for writ of habeas corpus [docket entry 1].

**IT IS FURTHER ORDERED** that if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a MOTION for a COA within **TWENTY–ONE (21) DAYS** of filing a Notice of Appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States,* 310 F.3d 900, 903 (6th Cir.2002) (*"We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to ex-* *plain their argument for issuance of a COA.")* (emphasis added). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **ELEVEN (11) DAYS** of service of Petitioner's motion for a COA.